# DAISY NICOL v. GEORGE GEITLER.[1]

January 27, 1933.

No. 29,074.

[1]Reported in 247 N. W. 8.

*George Beaverson,* for appellant.
*Robb, Rich & Frohne,* for respondent.

WILSON, CHIEF JUSTICE.

Plaintiff appealed from an order denying her motion for a new trial after a verdict was directed for defendant.

Respondent George Geitler, the only defendant served and the father of Harold Geitler, lived in Minneapolis and owned an automobile. On April 18, 1928, with the express permission of his father, Harold Geitler, then about 18 years old, used the car. He invited his friend Harold E. Nash, 21 years of age, to ride with him to Osseo, a short distance north of Minneapolis, where they called at the home of Cora Baier at about eight o'clock p. m. In company with her and another young lady they drove back into Minneapolis, returning to Osseo about 11 o'clock p. m. They all then went into the Baier home. The car was left in the near-by driveway. Up to that time Harold Geitler did all the driving. The travel had all been on trunk highway No. 3, a paved highway connecting Minneapolis and Osseo. At about 12:30 a. m. Harold Geitler left the Baier home. Shortly thereafter Harold E. Nash left the house, going toward the car. Soon thereafter the lights were turned on on the car, and it was driven away. Harold Geitler apparently returned to his home some time during the night—at least someone was heard therein—and in the morning his clothes, other than those which he wore that night, were gone, and he has not been seen since. He disappeared.

At about one mile south of Osseo there is a place where said highway curves to the right. The road apparently goes in rather a southeasterly direction and makes this curve so as to go practically straight south, and on the curve another road enters directly from the north in a straight line with the trunk highway south of the curve. To the left and just beyond the curve to the left and near the southerly part of the curve is located a farmhouse, from which there is a private driveway leading to the highway. The paved highway was of the usual width, and on the easterly side at the place here involved was a four- or five-foot shoulder, and immediately beyond that was a road ditch, the bottom of which was four or five feet below the level of the shoulder and perhaps one to two feet lower than the level of the ground beyond. On the night in question there was a mist, which later apparently turned into snow so that automobiles traveling soon thereafter made tracks on the pavement.

At about five o'clock a. m. the car was found on the roadside of said highway standing in the private driveway to said farm. Harold E. Nash was found dead in the back part of the car. He had a badly fractured skull, which caused death, and many wounds and bruises on his neck, head, body, and legs. The automobile was standing in the driveway and was headed toward but about three or eight feet from the pavement. About four feet from the car on the northerly side was a pool of blood. About this blood were several automobile tools. Blood was on the car. The car was badly wrecked. The tracks of the car would indicate that it had proceeded in substantially a straight line without making the turn or curve to the right and that it had gone off the pavement on the left-hand side of the road and turned completely over. The right-hand running board and fender were destroyed. Both front doors were off. The left-hand back door was broken. The entire front part of the top from the back part of the back doors was destroyed and smashed, and much glass was necessarily broken. The radiator was crushed backward, the dashboard was wrecked, and it would seem from pictures in evidence that the car was in a condition beyond repair.

Tracks and marks on the pavement and shoulder indicated that the car came from the north. It had left the pavement about 15 feet from the place where it stood, turned over, and bits of the top and glass were strewn along the shoulder of the highway a distance of about 15 feet. The pieces of the top and pieces of glass were identified as coming from defendant's car. In the last 15 or 20 feet there were freshly made gouges and marks on the ground. At one place the dirt was somewhat piled up. This was apparently the place where the car commenced to turn over. Up to this place there were tracks indicating that the car had skidded. The tracks or skid marks extended back to the north about 75 feet, gradually getting smaller in size until they got down to the size of a tire traveling on the highway. From the point where these tracks were normal until they left the pavement the distance was about 150 feet.

■ The evidence is sufficient to support a finding that the family car doctrine was applicable. It follows that if this tragedy is the result of Harold Geitler's negligence in the operation of the car the defendant would be liable therefor.

■ The argument is that Harold E. Nash or someone else may have driven the car and not Harold Geitler. There is testimony in the case by the mother of Harold E. Nash and others who were intimately acquainted and associated with him in life to the effect that they never saw him drive an automobile; and it is argued with some degree of force by the plaintiff that the jury could conclude from this branch of the testimony that Harold E. Nash could not or at least did not drive automobiles. Harold Geitler, however, was the only one present during the evening or at any time who was authorized to drive the car. His father had previously said to him: "Don't let anyone else drive the car because the insurance covers only me and you and nobody else"; and he had answered, "All right, dad." Harold Geitler had done all the driving while these young people were riding. He left the house first. The natural and reasonable supposition is that he went to the car. There is no suggestion or reason offered as to why he should go anywhere

else. Shortly after he left the house Nash left. Nash was seen to start toward the car. Apparently Geitler was at or in the car waiting. If Nash drove the car away in the absence of Geitler he committed a crime. We must presume that he did not do that. We see nothing to justify the suggestion that Geitler had assumed to authorize him to operate the car in violation of his promise to his father. Nor does it seem reasonable that Nash, whose mother, with whom he lived and who had never seen him drive a car, would undertake to operate this car. No explanation is offered as to why these two young men, friends and companions of long standing, should separate and Nash drive the other's car away without Geitler's being with him. It is highly probable that Nash would have stopped to look for Geitler if he were not in the car. It is more probable that Geitler would have driven the car if he were present.

Under the circumstances the jury could infer that Geitler drove the car when it left the Baier home. Later events support the claim, and it would be a permissible inference for the jury to draw; otherwise his returning to his home to get his clothes and his disappearance would seem inexplicable. If he had no connection with this tragedy, we see no reason for his unnatural departure. If the jury should conclude, as the evidence will permit, that Geitler drove the car away from the Baier home, it is to be presumed that he continued to drive until the tragedy occurred.

■ The car left the paved road, went over the shoulder, and turned over. This made a prima facie case of negligence for plaintiff. It permits, but does not compel, a finding of negligence, though it is sufficient to sustain such finding. Such is the rule of res ipsa loquitur, which is applicable. Heffter v. Northern States Power Co. 173 Minn. 215, 217 N. W. 102; Heath v. Wolesky, 181 Minn. 492, 233 N. W. 239; see Whitwell v. Wolf, 127 Minn. 529, 149 N. W. 299. Other states have applied the rule to cases where automobiles have left the road similar to a derailment. Brown v. Davis, 84 Cal. App. 180, 257 P. 877; Lietert v. Pickwick Stages, 68 Cal. App. 504, 229 P. 889; Brown v. Des Moines S. B. Works, 174 Iowa, 715, 156 N. W. 829, 1 A. L. R. 835; Ivins v. Jacob (D. C.) 245 F. 892; Livaudais v.

74

Black, 13 La. App. 345, 127 So. 129; Baker v. Baker, 220 Ala. 201, 124 So. 740; Scovanner v. Toelke, 119 Ohio St. 256, 163 N. E. 493; Masten v. Cousins, 216 Ill. App. 268.

The circumstances in which this car left the paved road invoked the application of the foregoing rule and called for explanation. It was up to the defendant to explain. In the absence of explanation, the rule would support a finding for plaintiff. The absence of the driver is unfortunate for the defendant, who is charged with the necessity of explanation, but it does not change the rule. He cannot thereby be relieved from meeting the duty imposed upon him by the rule.

There is some confusion in the record as to the automobile tracks at the place of the wreck and immediately thereafter, but the evidence is such as to permit the jury to find that there were no other car tracks near the place of the accident which would in any way indicate a collision between cars. Indeed, there is no evidence in the case requiring a finding that there were any other automobile tracks that could have any possible relation to this accident.

The evidence is that death resulted from a badly fractured skull, and that the deceased had many bruises and abrasions about his face and neck, cuts on his head and scalp, and abrasions and skin bruises on each knee. From the condition of the body, the finding of a pool of blood, and all of the other physical facts, no other conclusion could really be drawn than that the deceased met his death at the time this automobile was wrecked in leaving the highway. Not only do these circumstances indicate excessive speed and negligence in the operation of the car, but they are persuasive that the fatal injuries proximately resulted from such negligence. The circumstances are sufficient to support a conclusion on the part of the jury that defendant's negligence, established as above indicated, was the proximate cause of Nash's death.

This line of thought does not in any way violate the rule that presumption cannot be based upon presumption or inference upon inference. We have here a combination of many related circumstances, each tending more or less to support the other and leading

convincingly to the conclusion sought to be established. The presumption that Geitler was driving the car arises out of a state of facts quite independent of subsequent events. The negligence of the driver of the car arises out of the doctrine of res ipsa loquitur and rests upon the immediate facts invoking that rule. The fact of driving a car and the fact of negligence are each established by independent evidence. In proving the negligence we do not depend upon the proof relating to the driving but upon the doctrine of res ipsa loquitur, with the attendant physical facts, including tracks and the condition of the car. In proving the proximate cause we are entitled to look to the results and all the circumstances in the case, which clearly indicate that this car necessarily left the pavement under such circumstances not only to indicate negligence but also under such circumstances as would naturally and in all probability result in fatal injuries such as the decedent received.

We are of the opinion that all of the evidence in the case is sufficient to take the case to the jury and to sustain the finding in favor of plaintiff.

■ Plaintiff complains as to the court's ruling in relation to her efforts to prove that Nash could not drive a car. She sought to prove by witnesses closely associated with Nash in life by asking them directly the question as to whether Nash could drive a car, calling for an answer yes or no. The court sustained an objection to this as being a conclusion of the witness. Plaintiff herself testified that she was Harold Nash's mother; that her son lived in her home; that he attended school until 16, then worked in a candy factory, then for Sears, Roebuck & Company, and shortly before his death began to work for the Snyder Auto Paint Shop; that he did not own an automobile nor did she or her husband, Harold's stepfather; that the son was usually home evenings and that he regularly contributed money to his mother and her family; that the last time she rode in an automobile with him was July 4, 1927. She had seen Harold get into automobiles with other people—some would call for him and he would ride away with them—but she never saw him at the wheel.

The question above mentioned was put to her and excluded. An offer was then made to make such proof in this way because it was claimed that because of her close association with her son she would have necessarily known that fact, and, that if the contrary were true, she would likewise have known it, and that such fact could be established only through what might be otherwise called an opinion or conclusion, since the son of course could not be called. The court on objection excluded the offer as being a conclusion of the witness.

It was permissible for plaintiff to detail what she knew and what she observed, and this she did. Her detailed statement enabled the jury to draw just as accurate if not a more impartial conclusion than she could have drawn. As the trial court stated it: "She may detail what she knows, and if her association with him was such as to establish it, why that will establish it." We are of the opinion that the ruling was correct.

■ When Geitler left the Baier home he wore his hat. A week or ten days after the accident this hat was found blown up against the north side of the cemetery fence about 20 rods south of the place of the accident. It was offered in evidence but excluded. This was a relevant and material circumstance, the probative value of which was for the jury. It was error to exclude this evidence.

■ Plaintiff was permitted to reopen the case a second time and then attempt to prove by the witness Cora Baier, now Cora Chestrom, that just as Nash was about to leave the house on the night mentioned the horn on the car was tooted. This evidence and offer were excluded. The exact reason for the ruling is not clear. This too was a circumstance that should have been received in evidence. It tended to show that Geitler had not abandoned the car and Nash, as it was highly improbable that some person other than Geitler would have been tooting the horn on this car at that time and place.

The order is reversed, and a new trial is granted.

HILTON, Justice (dissenting).

In order to recover it was incumbent upon plaintiff to prove: (1) That the automobile was being operated by defendant's son at the time it ran off the highway; (2) that the automobile was negligently operated by him; and (3) that the death of plaintiff's son resulted from such negligence. In my opinion the evidence would not warrant a jury in finding in her favor on either proposition.

There was no testimony from which an inference could properly be drawn that Harold Geitler was in the car or that he was driving it after he left the Baier residence. No witness then or afterwards saw him in or near the car. Cora Baier testified that the car started off promptly after Nash left the house. A finding that Harold Geitler drove the car away would rest upon mere speculation. Appellant contends that because the Geitler boy had driven the automobile previously in the evening a presumption is raised that he continued to drive it and was the driver of it at the time of the accident. The claimed presumption is a too violent one. Nor do I think the statement in the majority opinion, that "under the circumstances the jury could infer that Geitler drove the car when it left the Baier home," is justified. I feel that it cannot properly be inferred that Geitler was driving the car because he had promised his father that he would allow no one else to drive, and that Nash was not driving the car because none of his family or friends knew that he could drive one. Also, it seems to me that the proffered evidence relative to the finding of the hat was too remote to be of any probative value in establishing either of the three hereinbefore stated essentials incumbent upon plaintiff to prove. There was a most unfortunate and regrettable occurrence. I feel, however, that a verdict for plaintiff would rest upon speculation and conjecture. There is a marked difference between a reasonable inference or presumption and a possibility. It would not be safe or just that the rights of individuals should be put to a hazard of having a jury guess as to possibilities.