## ETHEL VONDRASHEK v. JOHN P. DIGNAN.[1]

August 13, 1937.

No. 31,277.

[1]Reported in 274 N. W. 609.

William H. Freeman, for appellant.

Samuel A. Anderson and John D. Greathouse, for respondent.

HOLT, JUSTICE.

Defendant appeals from the order denying his motion for a new trial.

On June 9, 1935, at about three o'clock a. m., as defendant drove his car easterly on Kellogg Boulevard, in the city of St. Paul, it struck the center pier of the viaduct leading from the depot over to the train shed, severely injuring plaintiff, riding with him. The complaint alleged that defendant so negligently operated the car that the collision resulted. The answer denied the negligence charged and pleaded as a defense the contributory negligence of plaintiff. Plaintiff made a *prima facie* case by her own testimony and rested. Defendant was the first witness called for the defense and did by his own testimony so conclusively establish that his negligent driving caused the car to collide with the pier that, when the testimony closed, his attorney stated to the court that it was admitted that defendant was "negligent as a matter of law, and his negligence was the proximate cause of the happening of the accident" to plaintiff. The sole defense then remaining was contributory negligence. This was predicated upon the claim that plaintiff remained a passenger in defendant's car with knowledge that he, the driver, was under the influence of intoxicating liquor. Both plaintiff and defendant testified that they met about nine o'clock in the evening of the eighth of June with two others, and each had two cocktails. The four then drove from downtown to the Silver Dime at Lexington and University avenues, where they danced and had some beer; defendant states he had two or three glasses and plaintiff admits she had one and a half. They remained until after midnight, then went downtown, where defendant had his car parked,

and plaintiff and defendant entered it and met the other two at a night club, "The Owl," on the west side of the river. No drinks were there had. After a short stay plaintiff and defendant left. Defendant stated that they drove around the loop district and then down Kellogg Boulevard to the place of accident.

As stated, defendant was the first defense witness. He did not claim that he was intoxicated nor that plaintiff or anyone else could so conclude from his speech or conduct. In respect to his drinking, he testified:

"I could tell I had something to drink, but it did not have any effect on my speech or walk or actions. * * * I was not strictly sober, but nobody could tell I was under the influence of liquor." He was asked and answered these questions:

Q. "Were you able to drive and did you drive your car in a normal manner every moment Miss Ethel was in the car with you?

A. "I figured I was driving all right.

Q. "Well, did you?

A. "Yes, I did.

Q. "So far as you know, Miss Ethel had no reason to suppose, or even suspect you were not capable of driving safely, had she?

A. "I don't know, if she did she did not say anything to me.

Q. "You don't know of any reason why she should, do you?

A. "Not that I know of."

Thereafter defendant called the doctor then employed by the public safety department of the city of St. Paul, who some two hours after the accident examined defendant with respect to his injuries and personal condition, and offered to show that in the opinion of the doctor defendant was from 20 to 25 per cent under the influence of intoxicants. The objection that defendant could not impeach or dispute his own testimony was sustained. The same ruling prevented three police officers, who came in contact with defendant and observed his condition about the same time as the doctor, from giving their opinion as to defendant being under the influence of liquor. In Clapp Bros. & Co. v. Peck, 55 Iowa, 270, 272, 7 N. W. 587, 588, the rule is thus stated:

"A party will not be permitted to impeach the general reputation of his witness, or impugn his credibility by general evidence showing him to be unworthy of belief. 1 Greenleaf, Evidence, § 442. But this rule does not preclude a party calling a witness from proving the truth of any particular fact by any other competent testimony in direct contradiction to what such witness may have testified. *Id.*, § 443."

Under modern law a party to the suit is a competent witness, and his testimony is generally admissible and to be considered the same as any other witness. Horneman v. Brown, 286 Mass. 65, 190 N. E. 735; Ritchie v. Reo Sales Corp. 272 Mich. 684, 262 N. W. 321. In Harlow v. Leclair, 82 N. H. 506, 136 A. 128, 130, 50 A. L. R. 973, the question arose in this manner: The plaintiff sued in *assumpsit*. Both parties testified. Plaintiff admitted an illegal consideration. Defendant denied it, but moved for a nonsuit upon plaintiff's testimony, which was granted. Plaintiff on appeal insisted that it was for the jury to pass on the veracity between the two parties. The court recognized the rule expressed in Hill v. West End St. Ry. Co. 158 Mass. 458, 459, 33 N. E. 582, and amplified in Horneman v. Brown, 286 Mass. 65, *viz.*:

"There is no sound reason why the familiar doctrine that a party may contradict, though not impeach, his own witness, should not, if the circumstances are consistent with honesty and good faith, be applied when he is himself the witness. * * * In other words, the law recognizes the fact that parties, as well as other witnesses, may honestly mistake the truth, and requires juries to find the facts by weighing all the testimony, whatever may be its source."

But from the rule the court concludes that it does not follow [82 N. H. 510] "that a plaintiff of average intelligence, in full possession of his faculties, who testifies to facts peculiarly within his knowledge, which, if true, utterly destroy his case, has a right to go to a jury and seek a verdict based upon a finding that his version of the facts is false." And this statement from Western & A. R. Co. v. Evans, 96 Ga. 481, 23 S. E. 494, 495, cited: "It surely can never be unfair to a party laboring under no mental infirmity, to

deal with his case from the standpoint of his own testimony as a witness." The court then undertakes to formulate a rule under which a party should be permitted to introduce evidence contradicting his own testimony, and states that these circumstances are to be considered [82 N. H. 512]:

"(1) Was the party at the time when the occurrence about which he testified took place, and when he testified, in full possession of his mental faculties? (2). Was his intelligence and command of English such that he fully understood the purport of the questions and his answers thereto? (3) What was the nature of the facts to which he testified? Was he simply giving his impressions of an event as a participant or an observer, or was he testifying to facts peculiarly within his own knowledge? (4) Is his testimony contradicted by that of other witnesses? (5) Is the effect of his testimony clear and unequivocal, or are his statements inconsistent and conflicting? The answer to the third of these questions will determine whether the fourth is material. If a party's testimony consists only of a narrative of events in which he participated or which he observed, there is an obvious possibility that he may be mistaken like any other witness. In such a situation, if other witnesses give a different version of the occurrence, his testimony must be weighed with theirs and he will not be concluded by his own statements. But when a party testifies to facts in regard to which he has special knowledge, such as his own motives, purposes or knowledge, or his reasons for acting as he did, the possibility that he may be honestly mistaken disappears. His testimony must be either true or deliberately false. To allow him to contradict his own testimony under these circumstances would not be 'consistent with honesty and good faith.' Whether his statements be true or false, he will be bound by them, and contradictions by other witnesses become immaterial. He will not be allowed to obtain a judgment based on a finding that he has perjured himself."

We think the foregoing clearly expresses the circumstances under which a party who has taken the witness stand and testified may offer other witnesses to contradict his own testimony. In the case

at bar defendant had good command of the English language, was concededly intelligent, and understood perfectly the questions asked and the answers he gave as a witness. The testimony above quoted was not a mere narrative of events, but he was there testifying to his mental and physical condition as influenced by the liquor he had consumed. His condition was a fact peculiarly within his own knowledge. Nor was there anything inconsistent or unequivocal in his testimony concerning his condition. We appreciate that it may be claimed that anyone who has partaken of liquor to any extent thereby clouds his judgment and dulls his perceptive powers. We also realize that defendant may have desired that plaintiff recover. She had been injured while his guest. He had procured insurance which protects him against such damages as she may recover. But there is nothing in his testimony that indicates absence of honesty and good faith. Moreover, there is not the slightest chance that the testimony of the doctor and police officers as to his condition two hours after the accident would have resulted in a favorable verdict to him. Defendant was not arraigned in court upon a charge of violating a statute. Nothing short of conviction could have been used as evidence. In Massie v. Firmstone, 134 Va. 450, 462, 114 S. E. 652, 656, it was said:

"No litigant can successfully ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him. He cannot be heard to ask that his case be made stronger than he makes it, where, as here, it depends upon facts within his own knowledge and as to which he has testified."

Another ground for holding that the rulings mentioned did not prejudice defendant is this: The burden was upon him to prove the contributory negligence of plaintiff. There was no attempt to prove any fact in defendant's conduct that might lead her to suspect that he was under the influence of liquor. The mere fact that in five hours he drank, to her knowledge, two highballs and two or three glasses of beer does not appear sufficient. The offer of proof did not go to any conduct of his in her presence prior to the

accident that might lead her to believe that he was not a sober and capable driver.

Defendant excepted to the charge when given, in that the court read the statute making driving a motor vehicle when under the influence of liquor a crime, limiting contributory negligence to the time the parties left the west side of the river to drive to the place of the accident, and reading L. 1929, c. 289, 3 Mason Minn. St. 1936 Supp. §§ 5687-5 to 5687-9, in respect to the statement obtained from plaintiff. In the motion for new trial no part of the charge was assigned as error. Calling the jury's attention to the fact that driving a motor vehicle while under the influence of intoxicants is by statute made a criminal offense was clearly proper. It certainly was not prejudicial after defendant's admission that his negligence was the proximate cause of plaintiff's injury. Plaintiff's conduct prior to her last entry into the car could not have contributed to her injury. We think the court properly applied L. 1929, c. 289, to a statement obtained from plaintiff the fourth day after the accident. The 18th assignment of error on the charge is unavailing, because no exception in respect to that subject was taken before the jury retired nor in the motion for new trial. The statement in the charge that a passenger in a car is not necessarily negligent if a nap is taken or the eyes closed must be taken as not misleading or improper. It was applicable only in case the jury found that she was normal when she made the statement taken by Mr. Gould four days after the accident.

It is to be hoped that if an attorney attempts to take exceptions to the charge in the manner here done by plaintiff's attorney the court will promptly exclude the jury while the exceptions are taken. It was never intended that an attorney taking exceptions to the charge should have the opportunity of making an argument to the jury to prove that the court stated the law incorrectly. We do not think defendant was in a position where he could be harmed by the practice pursued. The record is such as to call for a recovery in behalf of plaintiff. Other assignments of error than those discussed do not merit comment.

The order is affirmed.

STONE, JUSTICE (concurring specially).

I concur in the result largely out of deference to the opinion of the majority that whatever error there was resulted in no prejudice to defendant.

I cannot agree in the approval given to the rulings excluding evidence by others tending to show the intoxication of defendant, and the degree thereof, immediately after the accident. It seems to me that we are misapplying the rule of Harlow v. Leclair, 82 N. H. 506, 136 A. 128, 50 A. L. R. 973. In view of the testimony of the defendant that he "was not strictly sober," we should take with good deal of seasoning his other statements intended to minimize the degree of his intoxication. It is impossible for me to see how defendant's equivocal testimony took that question from the jury if otherwise it should have been given to them.

Returning again to the language in the Harlow case, 82 N. H. 512, my submission is that defendant was not "simply giving his impressions of an event," but testifying rather as to a conclusion, and one obviously questionable. Never before have I heard it argued that an intoxicated person is to be considered the sole or even the best judge of the degree of his abnormal condition. As soon as he becomes, on his own admission, "not strictly sober," he ceases to be a qualified judge of how drunk he is. Finally, defendant's testimony was not "clear and unequivocal," and it is not true that the fact of a person's intoxication is "peculiarly within his own knowledge" so as to justify the application of the rule of the Harlow case. Rather, in every case where either the fact or degree of intoxication is in issue, it must of necessity be determined objectively.

Laboring under the impression that the trial of a lawsuit is intended to bring out the truth, and to that end that no relevant evidence should be excluded, my submission is that it was error not to admit the testimony of the other witnesses called, which would have tended to show the truth concerning defendant's condition at the determinative moment. Impeachment of a party or witness is one thing. Mere contradiction, particularly as to a conclusion, is quite another. Altogether too closely do we construct the portals

of proof when we exclude evidence such as that offered in this case to show that defendant was intoxicated.

LORING, JUSTICE (concurring specially).

I agree with the views expressed by Mr. Justice Stone.