## AGNES J. WENGER v. VINCENT S. VELIE.[1]

July 7, 1939.

No. 32,033.

*Snyder, Gale & Richards,* for appellant.
*Galen E. Bush* and *Victor E. Essling,* for respondent.

HOLT, JUSTICE.

In the early morning of November 20, 1937, defendant turned off from Miller trunk highway about 26 miles east of International Falls to go some four miles north to a lodge or resort operated by plaintiff on the shores of Lake Kabetogama. About two and one-half miles from the trunk highway is a sharp turn to the right, near the crest of a small hill. Defendant did not notice the turn, and the car, in which plaintiff also was riding, left the road and overturned. Plaintiff, severely injured and unconscious, was pulled out of the car by defendant, and both were taken to International Falls for temporary medical aid. This action was brought to recover for the injuries sustained. There was a verdict for plaintiff. Defendant's motion for a new trial was denied, and he appeals from the order. Upon this appeal no error is assigned on any ruling

[1] Reported in 286 N. W. 885.

excluding or admitting evidence, nor is the verdict as to amount assailed. The sole ground for the appeal is the action of the trial court in ruling as a matter of law that defendant's negligence was the proximate cause of plaintiff's injury, and leaving to the jury the determination only of the damages to be recovered.

Defendant, called for cross-examination, gave the only testimony upon which was based the directions to find a verdict for plaintiff, for plaintiff, the only other person present, was asleep at the time the car left the road. Defendant's testimony rings true. It is not contradicted. It is corroborated by plaintiff insofar as to what was said and done when she was awake. The substance of his testimony is this: Just before November 19, 1937, defendant made an arrangement with plaintiff to open her lodge at Lake Kabetogama for him and three companions from Gull Lake, near Brainerd. They desired to stay at the lodge while hunting deer in the vicinity. Plaintiff and defendant at that time resided in Minneapolis. The three men from Gull Lake, as well as plaintiff and defendant, were to meet at Virginia on the evening of November 19. It so happened that defendant's three companions arrived too early and left for Lake Kabetogama before plaintiff and defendant arrived at the meeting place. Plaintiff directed her sons, 18 and 15 years of age, to drive ahead to the lake in her car, to open the lodge, and build the necessary fires. Defendant and plaintiff had to procure, in Virginia, the provisions needed during their stay at the lodge. They did so. A short distance out of Virginia, near Cook, defendant's car had a flat tire. It took some time to replace it. Plaintiff had been busy the night before preparing for the trip and had not had her usual sleep. Defendant did not know the place to turn off from the Miller trunk highway to the lodge, but was given directions by plaintiff how to find it. She informed him that the road to the lodge had dangerous turns, and requested him to wake her, in case she were asleep when they came to the turnoff, as she thought it safer for her to drive the car since she was familiar with the road. However, defendant passed the road to the lodge and did not notice his error until a large road sign indicated that they had arrived at the outskirts of International Falls. He then awakened

plaintiff. They turned around and had to drive back 26 miles, as plaintiff knew and informed defendant. Again she told him to be sure to wake her in case she were asleep when they came to the lake road so that she might drive in, for it was a "tricky road" to one who was not acquainted with it. Defendant now readily found the place where to turn off from the trunk highway, but he concluded that he could drive in without disturbing plaintiff's sleep. He testified it was snowing; that for half a mile or so before the place of accident the road was straight. He said his speed at the time of the accident was 35 to possibly 40 miles an hour. He testified: "Well, as I approached this turn, the blasting that you mentioned, and men previously had evidently taken away some trees—it was just a slight crest of the hill, snowing, and my headlights shining in the trees along the side, giving the impression that the road line was straight, and I went straight, and the road turned sharply to the right and made an S-turn. At that time I went down the embankment and rolled over, came back upon the road and tipped upside down." There were blasted rocks at the turn so the car was completely destroyed.

No doubt defendant meant to be considerate of plaintiff and intended to drive carefully. But it seems to us that if a jury had returned a verdict in his favor herein the trial court, or this court, would have been compelled to set it aside as contrary to the evidence. Driving at night when the snow is falling, at a speed of 35 to 40 miles an hour, over a road with which the driver is unacquainted, but of which his passenger has warned him that it has bad or tricky turns, must be deemed negligence as a matter of law. According to defendant's testimony, the car, only used about six months, was in perfect condition. Only about an inch of snow had fallen. The roadway was not slippery. The mishap cannot be attributed to anything other than defendant's negligent operation of the car and utter disregard of plaintiff's warning and request. When the evidence conclusively establishes a defendant's negligence or a plaintiff's contributory negligence, the trial court may properly take such issue from the jury. There is here no dispute as to any fact that enters into a determination of defendant's negligence

directly causing plaintiff's injuries. It is common knowledge that short turns cannot safely be negotiated with an automobile going at 35 miles an hour. From defendant's own account of what transpired reasonable minds can reach but one conclusion, and that is that he drove his car negligently and such driving proximately caused plaintiff's injuries. We think, in this instance, the trial court rightly charged the jury that plaintiff was entitled to a verdict that under the evidence would fairly compensate her for the loss sustained.

Defendant cites, among other cases, Nicol v. Geitler, 188 Minn. 69, 73, 247 N. W. 8, 10, where it was said that the fact that a car left the paved road, went over the shoulder, and turned over, made a *prima facie* case of negligence for plaintiff. "It permits, but does not compel, a finding of negligence, though it is sufficient to sustain such finding. Such is the rule of res ipsa loquitur, which is applicable." Several cases from this and other states are cited. It seems, in this case, that defendant's testimony eliminated every element other than his own negligence as the cause for the car leaving the road and overturning. The roadbed was not soft or slippery. No defect in the car or its equipment contributed to the disaster. This is not a case like Vogel v. Nash-Finch Co. 196 Minn. 509, 265 N. W. 350, where decedent's contributory negligence was held for the jury. Nor is it similar to those cases where an unexpected obstruction is encountered on a highway at night, the obstruction blending with the appearance of the roadway, as in Tully v. Flour City C. & O. Co. 191 Minn. 84, 253 N. W. 22, and the cases therein cited. In the case at bar defendant admits that plaintiff informed him that there were tricky turns in the road, and exacted a promise from him to waken her so that she, who knew the road, might drive the car safely. Still he undertook the driving at a speed at which no dangerous curves could be negotiated at night.

Plaintiff claims defendant's exception to the charge is belated. The trial court apparently ignored the claim, and we do likewise.

Order affirmed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.