## DARLENE NACHTMANN TANSKI AND ANOTHER
## v. RAYMOND JACKSON AND ANOTHER.

130 N. W. (2d) 492.

September 18, 1964—Nos. 39,215, 39,216.

*Lewis, Hammer, Heaney, Weyl & Halverson*, for appellants.
*Munger & Balach*, for respondent Tanski.
*Friedman & Friedman*, for respondent Stadler.

OTIS, JUSTICE.

Plaintiffs were passengers in an automobile owned by defendant Harold Jackson which was being driven by defendant Raymond Jackson when it left the highway and turned over, causing the injuries for which plaintiffs have recovered damages. Defendants appeal from an order denying a new trial.

On the evening of May 14, 1961, David Stadler, then 21, was the escort of Mrs. Tanski, then single and 17 years of age. Raymond Jackson, who was 19, escorted one Carolyn Froehlich, then 18 years of age. The two couples attended a high school prom together in the vicinity of Duluth. Jackson admitted to having consumed two beers and a "couple of shots" of whiskey before arriving at the dance about 8:30 p. m., and in the course of the evening having what he described as a "taste" of champagne. The four young people danced from 8:30 to 11:30 during which time Jackson ate a light lunch. Upon leaving the high school they drove to Duluth and then headed northeast on Highway No. 61. Stadler and Mrs. Tanski were in the back seat, and Jackson was driving. It was raining quite hard and the blacktop was wet. Between 12:15 and 12:30 a. m., on an S-curve at a point still within the city limits Jackson's car suddenly began to swerve, failed to negotiate a left turn, went off the highway to the right, leaped a 40-foot ravine, and landed upside down on the brink of Lake Superior more

than 200 feet from where the car left the roadway. Officers who arrived at the scene testified there were a number of broken bottles in and about the car, a half-pint bottle of liquor nearly empty, a half-dozen cans of beer, and an empty champagne bottle. The breath of each of the occupants smelled of liquor.

Jackson was unable to explain the cause of the accident and only remembered trying to negotiate the curve and turning over. None of the other occupants was able to account for the car's leaving the highway.

■ The defendants assign as error (1) the court's ruling that contributory negligence and assumption of risk were not available defenses and (2) its admonition that the jury disregard all the evidence concerning the consumption of alcohol because a determination that any of the occupants was under the influence of liquor would be a matter of conjecture.

The officer who smelled alcohol on Jackson's breath refused to speculate as to whether he was "under the influence." The only other evidence from which the jury could have inferred intoxication on his part was the happening of the accident itself, which in our opinion was not sufficient foundation for submitting assumption of risk. While under some circumstances this might be enough to allow the issue of a driver's *actual* intoxication to go to the jury,[1] in the instant case, where the application of the doctrines of assumption of risk and contributory negligence depends on there being *evident* intoxication, we believe the court's ruling was correct.[2]

It is the contention of defendants that plaintiffs knew the pavement

---

[1]Gebhard v. Niedzwiecki, 265 Minn. 471, 482, 122 N. W. (2d) 110, 117.

[2]His own counsel, both at the trial and on appeal, has vigorously attempted to impeach Raymond Jackson with respect to the issue of Raymond's intoxication. In our opinion this is not a proper matter for impeachment under the rule announced in Vondrashek v. Dignan, 200 Minn. 530, 534, 274 N. W. 609, 611. What is more important, there appears to be some conflict between counsel's obligation to assert the defense of assumption of risk on behalf of Harold Jackson and his duty to protect his client, Raymond Jackson, from the serious consequences of a finding that he was intoxicated.

was wet, were familiar with the winding character of the highway, and realized that Jackson was driving between 50 and 60 miles per hour in a 50-miles-per-hour zone. However, Stadler and Mrs. Tanski were in the back seat, and testified their attention was directed at one another and not at the highway when the accident happened. We have held in a number of cases that a passenger has no obligation to act as a lookout for his driver. His responsibility is limited to warning the driver of dangers which are apparent to him but have escaped the attention of the driver, and then only if the circumstances permit an effective warning.[3] Nor is there support for defendants' position that Jackson showed such a degree of continuous incompetence that his passengers had a duty to admonish him or refuse to ride with him further. We are of the opinion that the evidence falls far short of permitting a finding that Jackson's driving was sufficiently erratic to put his back-seat passengers on notice of the likelihood of an accident.[4] It was therefore proper to remove from the jury the issues of contributory negligence and assumption of risk.

■ The court charged the jury that the doctrine of res ipsa loquitur applied. This is assigned as error. Defendants take the somewhat inconsistent position that the res ipsa loquitur doctrine has no application because "defendant Jackson was rounding a curve at too high a speed in the rain and the car simply went out of control." If this argument is sound it is difficult to understand how defendants have been prejudiced. If Raymond's negligence cannot be inferred it is only because it has been proved by specific acts of negligence.[5] We have considered res ipsa in a number of instances where cars have inexplicably left the highway. It has long been the law that in the absence of any explanation, the fact that the driver has lost control and gone off the

[3]Rahja v. Current, 264 Minn. 465, 468, 119 N. W. (2d) 699, 701; Rutz v. Iacono, 229 Minn. 591, 595, 40 N. W. (2d) 892, 895; Burgess v. Crafts, 184 Minn. 384, 386, 238 N. W. 798, 799.

[4]Burdick v. Bongard, 256 Minn. 24, 29, 96 N. W. (2d) 868, 873.

[5]Olson v. Buskey, 220 Minn. 155, 164, 19 N. W. (2d) 57, 61; Klingman v. Loew's Inc. 209 Minn. 449, 455, 296 N. W. 528, 531; Rule 43.06, Rules of Civil Procedure.

highway permits, but does not require, the jury to draw an inference that the accident resulted from his negligence. The rule is one of convenience occasioned by the passenger's inability to determine the facts. As applied to the instant case there is no question but that the accident is one which would not ordinarily have happened except for negligence; the car was under the exclusive control of Raymond Jackson; and plaintiffs were in no position to account for what actually transpired, this information being peculiarly within Raymond Jackson's knowledge.[6] It was therefore proper to give the res ipsa instruction.

■ The defendants requested the following instruction, which was refused:

"There is evidence in this case that the automobile driven by defendant Raymond Jackson skidded off the road. The fact that a car has skidded, standing alone, is not evidence of negligent driving. If the skidding could have been prevented by the use of reasonable care, then it is evidence of negligence."

This language, taken from Cohen v. Hirsch, 230 Minn. 512, 42 N. W. (2d) 51, has been held by us in a number of decisions to be appropriate, and in particular circumstances the failure to give it is prejudicial error.[7] However, where skidding is such a slight factor that the charge would overemphasize the theory of the defense,[8] it need not be granted. As we view the record, this is such a case. It was neither plaintiffs' nor defendants' theory that skidding played an important role in precipitating the accident. At most the car swerved before going off the highway, but the evidence compels a finding that skidding was the result and not the cause of leaving the highway. Under such circum-

---

[6]Marsh v. Henriksen, 213 Minn. 500, 7 N. W. (2d) 387; Nicol v. Geitler, 188 Minn. 69, 73, 247 N. W. 8, 10; Cullen v. Pearson, 191 Minn. 136, 253 N. W. 117, 254 N. W. 631; Wenger v. Velie, 205 Minn. 558, 286 N. W. 885; Heath v. Wolesky, 181 Minn. 492, 233 N. W. 239.

[7]Oldendorf v. Eide, 260 Minn. 458, 110 N. W. (2d) 310; Hammond v. Minneapolis St. Ry. Co. 257 Minn. 330, 101 N. W. (2d) 441.

[8]Oldendorf v. Eide, 260 Minn. 458, 462, 110 N. W. (2d) 310, 313; Floen v. Sund, 255 Minn. 211, 215, 96 N. W. (2d) 563, 567.

stances, if it was error to refuse the charge, the error was without prejudice.

■ The defendants assert that a new trial is required by virtue of excessive verdicts. The jury awarded Mrs. Tanski $6,290 which we find to be within permissible limits. At the time of the accident she was a young woman 17 years of age. She was rendered unconscious by the accident but thereafter endured the terrifying experience of being trapped in the wreckage when there was imminent danger of fire from escaping gasoline. She had her Achilles' tendon severed which required that she be in a cast for 6 or 7 weeks. For several months her foot drained, requiring frequent medical attention for dressings and cleaning. She had a number of scars, some of which were permanent, including those on her knees, thighs, elbow, shoulder, and one across her forehead. Scar tissue on her foot has made it difficult for her to wear shoes comfortably. She was out of work for 2 or 3 months. Her hospitalization continued from May 14 to May 22. Her foot was incised and drained in October 1961 and wire stitches were removed from the wound the following March. Her treatment continued through the spring and into the summer of 1962. Her doctor estimated that as a result of the accident she would suffer a 10- or 15-percent permanent disability to the lower leg and ankle. Under all of the circumstances we hold that the damages awarded Mrs. Tanski are not excessive.

■ Defendants protest that the jury arrived at a verdict of $10,500 in favor of David Stadler as a result of overhearing counsel for Stadler comment at the bench that $10,500 was the limit of defendant Harold Jackson's policy. Stadler's counsel denies he mentioned that figure and asserts that in any case his remarks were inaudible to the jury, a conclusion with which the trial court agrees. However, counsel was reproved by the court for exposing the trial to the possibility of a tainted verdict and in that admonition we concur.

Apart from the correlation between the amount of the verdict and the amount of the policy limits, we are of the opinion the damages awarded plaintiff Stadler are excessive. Adopting his testimony and that of his medical witnesses, it appears that at no time was he rendered unconscious by the accident, his hospital confinement was for

a period of only 5½ days, and he was confined to his home for a week, losing 16 days of work, amounting to $224 in wages. His immediate injury was a compression fracture of the seventh cervical vertebra, requiring that he wear a neck brace temporarily. He had 16 stitches in his forehead and 2 in his ear. For a period of time he had a paresthesia and numbness of his left hand and arm. His left leg was slightly injured, and he complained of difficulty and limitation of motion in his neck when he looked up and down in connection with his occupation as a timber cruiser. Through the fall of 1961 and the following winter, in extremely cold weather he experienced some pain between his shoulder blades and had difficulty lifting heavy objects. One doctor testified as follows:

"* * * [I]t is difficult to evaluate the percentage of disability in a person. At one time there might be a certain amount and another time there may be no disability. I estimated in October, I believe it was in this letter to you—December 11th, that he had—I would estimate about ten percent disability because of this injury to his neck and surrounding tissues."

However, the same doctor acknowledged that in his own office notes of August 29, 1961, he had made this entry:

"Neck feels good, injured three and a half months ago, and spine filled in and healed on the X-ray taken at the office on that date."

In addition the doctor wrote the following letter on October 17, 1961:

"He returned to part-time work on June 1st, 1961, and full-time work on July 1st, 1961. I have seen David frequently to follow his course with X-rays, and it is my conclusion at this time that he is fully recovered and will have no permanent disability."

A neurologist who examined plaintiff in anticipation of trial at the request of his counsel stated that Stadler sustained some limitation of motion in his neck as a result of the accident. His rating of permanent disability of the spine was 10 or 15 percent. Including his loss of wages the total amount of Stadler's special damages came to $833.50.

As we have previously indicated, the responsibility for granting re-

mittiturs is one which the trial court should not hesitate to accept when the circumstances require it.[9] In his memorandum accompanying the order denying a new trial the court makes no reference to the claim of excessive damages. It therefore becomes our reluctant duty to act without the benefit of the observations and impressions available to the trial court. In so doing we have come to the conclusion that the evidence compels a finding that plaintiff's injuries are substantially healed, his disability slight, his special damages relatively small, and the interference with his normal activities minimal. We therefore hold that defendants are entitled to a new trial with respect to the claim of plaintiff Stadler unless within 10 days he files with this court a consent to a remittitur reducing the amount of his verdict to $8,000.

We have considered the other assignments of error and find them to be without merit.

Reversed and remanded.

ROGOSHESKE, JUSTICE (dissenting).

I cannot agree that appellate remittitur should be used in this case. I would hold the award excessive and remand with directions to the trial court to determine the amount of the remittitur.

---

[9] Auger v. Rofshus, 267 Minn. 87, 125 N. W. (2d) 159.