**Duane W. HANSON, Appellant,**

v.

**CHICAGO, ROCK ISLAND AND PA-CIFIC RAILROAD COMPANY,**
**Respondent.**

No. C5–82–1438.

Supreme Court of Minnesota.

March 16, 1984.

Richard A. Walkovets, Gary W. Becker, Minneapolis, for appellant.

A. James Dickinson, St. Paul, for respondent.

SIMONETT, Justice.

This appeal raises questions whether the jury's damage award in a personal injury FELA action should be reinstated or the trial court's remittitur be affirmed, or whether a new trial on damages should be granted. We affirm the remittitur as modified, but on condition that if the remittitur is not acceptable to plaintiff, defendant's motion for a new trial on damages is granted.

On August 16, 1978, plaintiff Duane W. Hanson, an employee of defendant Chicago, Rock Island and Pacific Railroad Company, was attempting to tighten a chain placed around a derailed hopper car to secure the car to a flatbed. Hanson was using a "chainbinder," a wrench-like device with hooks on each end to catch the links of the chain. Because the handle on the chainbinder was not long enough to provide sufficient leverage, Hanson used a "cheater," a length of pipe which fitted over the handle of the chainbinder. While exerting pressure, the cheater slipped off the handle, with the handle recoiling and striking on the left side of his head, resulting in fractures to the skull and loss of the left eye.

Plaintiff Hanson sued the defendant railroad for his personal injuries under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* (1976). After a 3-day jury trial, Judge J. Jerome Kluck presiding, the jury returned a special verdict finding the railroad 95% negligent and plaintiff 5% and awarding plaintiff, after reduction for plaintiff's 5% negligence, the sum of $500,-000.[1]

The defendant railroad then moved for a *Schwartz* hearing into alleged jury misconduct and for a new trial on damages, or, in the alternative, for a remittitur reducing the verdict to not more than $248,000. The trial court denied both the request for a *Schwartz* hearing and the motion for a new trial but granted an unconditional remittitur, reducing the jury's award from $500,-000 to $351,500. Plaintiff-appellant Hanson appeals, claiming the trial court erred in granting remittitur and that the jury's award should be reinstated. The defendant-respondent Rock Island filed a notice of review, claiming the trial court erred in not granting it a new trial. The railroad's position on appeal is that it should have a new trial because of trial court error; if a new trial is not forthcoming, the railroad seeks affirmance of the remittitur.

The main issue may be stated as follows: Did the trial court exceed a proper exercise

---

**1.** The last question on the special verdict form was: "Reducing the total recovery of the plaintiff by the amount of negligence of the plaintiff, if any as to determine at No. 5 above, what amount will fairly compensate the plaintiff for the injury he received?" The jury wrote "500,-000.00."

of its discretion in reducing the jury's verdict from $500,000 to $351,500? Our consideration of this issue is somewhat hampered by the trial court's failure to offer any explanation for its action, other than, "[t]he Court is of the opinion that the jury verdict of $500,000 in the above entitled matter was excessive, therefore, the Court has determined that the damages to Plaintiff was $370,000 and reduced by five per cent equals an amount of $351,500."

Ordinarily, we are reluctant to substitute our judgment for that of the judge who conducted the trial. *Ahrenholz v. Hennepin County*, 295 N.W.2d 645, 649–50 (Minn.1980). The trial judge knows the case in a way we never can. Nevertheless, we need to "make a detailed appraisal of the evidence bearing on damages" in determining whether the trial judge, in granting remittitur, exceeded his proper discretion. *Grunenthal v. Long Island Railroad*, 393 U.S. 156, 159, 89 S.Ct. 331, 333, 21 L.Ed.2d 309 (1968).

Here, Duane Hanson was 56 years old at the time of his accident. The blow to his head caused facial lacerations, a fracture of the floor of the left orbit and the left maxillary bone, plus fractures of the skull. The left eye was damaged and had to be removed. Thereafter Hanson underwent five surgeries in an effort to reconstruct the socket to hold an artificial eye. He apparently has difficulties wearing the artificial eye, and the fact that he is lefthanded compounds the loss of sight on the left side, giving him problems in balance if working off the ground and in operating certain tools, although apparently Hanson has adjusted psychologically to his loss.

Mr. Hanson has an eighth grade education and had worked for the Rock Island for 30 years. He was 60 at the time of trial and probably would have retired at age 65. In spite of his injury, he returned to work for the defendant railroad 7 months after his accident. When the Rock Island ceased operations in March 1980, Hanson, along with others, was laid off, and since then apparently has been unable to find other employment. Assuming Hanson would have continued in gainful employment until age 65 if not injured—which requires, as the railroad points out, assuming that Hanson would have found other work with comparable pay after the railroad quit operating—there was testimony his claim for loss of earnings, discounted to present value, would not have exceeded $100,000. The jury's verdict does not include hospital and medical expenses, which were paid separately. Thus, at least $400,000 of the jury's verdict was for pain, suffering, disability, and disfigurement.

Both parties cite comparable awards favoring their positions. The railroad cites a 1980 decision affirming a $240,000 verdict for loss of an eye, where the verdict award included medical expenses and lost future earnings. *See Allen v. Seacoast Products, Inc.*, 623 F.2d 355 (5th Cir.1980). In contrast, plaintiff cites numerous eye-loss verdicts from other jurisdictions, adjusted to 1982 dollar equivalents, to argue that his $500,000 verdict is appropriate, even modest. The point remains that "[n]o award can be sustained, however, unless it is reasonable in light of the circumstances of the particular case." *See Ahrenholz*, 295 N.W.2d at 649.

What tips the balance here in favor of affirming the trial court's remittitur is, we think, an irregularity in the manner in which the damages issue was submitted to the jury. The defendant railroad made this argument to the trial court in its post-trial motions, contending that the court's instruction on damages was confusing to the jurors, "thus allowing them to increase the award to an excessive and inflated amount." (Appellant's Brief, Appendix at 18.)

■ What happened was this. In accordance with *Norfolk & Western Railway v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), the trial court instructed the jury:

> If your verdict is in favor of Plaintiff, you will not increase or decrease the amount of your verdict by reason of federal, state or local income taxes, since the amount awarded to Plaintiff is not

taxable income to him within the meaning of the tax laws.

Immediately following this instruction, the trial court further instructed the jury at plaintiff's request and over defendant's objection:

I further charge you, as a matter of law, that any award made to the plaintiffs in this case is, within the meaning of the Federal income tax law, fully deductible by the defendant railroad in determining taxable income to it, if any.

We believe this second "counter-*Liepelt*" instruction was improper. Plaintiff cites no authority for it. Plaintiff says his requested instruction was not intended to counter *Liepelt* but then admits it was intended to answer the "natural question that the jurors inevitably ask after hearing the *Liepelt* instruction." According to plaintiff, his requested instruction "simply tells the jury that damages paid by the defendant are not treated as a penalty for tax purposes." Since the jury is already told that damages are to be awarded that will fairly and adequately compensate the plaintiff for his injury, it is unclear why more needs to be said.

The *Liepelt* instruction, by telling the jury that its award is not taxable income, aids the jury in assessing compensation that will be adequate. The counter-*Liepelt* instruction, on the other hand, serves no such purpose but instead tells the jury it is giving the railroad a tax deduction. This message may, as plaintiff contends, suggest to the jurors that their award will not penalize, but it also delivers the much stronger message that the jury need not stint on the adequacy of its award because, in effect, the government will be paying part of it. Moreover, as defendant points out, if a counter-*Liepelt* instruction would be proper, then the jury might be entitled to have evidence about tax loss carry forwards, depreciation and a host of other arcane tax matters admitted into evidence to dispute the tax impact of the deductibility of the verdict. We hold that the counter-*Liepelt* instruction should not be given. Indeed, in endorsing the *Liepelt* instruc-

tion, the United States Supreme Court observed that it was brief and easily understood and would not require any "additional qualifying or supplemental instructions." *Liepelt*, 444 U.S. at 498, 100 S.Ct. at 759.

While the trial judge did not explain the reasons for the remittitur, in view of the record and the arguments made to him on the post-trial motions, it appears to us that he took into account that the counter-*Liepelt* instruction probably inflated the jury's verdict. The trial judge has "large discretion" in determining if damages are excessive and whether the cure is a remittitur or a new trial. *Caspersen v. Webber*, 298 Minn. 93, 100, 213 N.W.2d 327, 331 (1973); *see also Marynik v. Burlington Northern Inc.*, 317 N.W.2d 347, 351 (Minn.1982) (*quoting Flanigan v. Burlington Northern Inc.*, 632 F.2d 880, 890 (8th Cir.1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981)) (failure of trial court to give *Liepelt* instruction was harmless error). From our appraisal of the record, we cannot say that the trial court exceeded the proper bounds of its discretion. We affirm the remittitur, but with two qualifications.

First, we note that the trial court, in making its remittitur, reduced the $500,000 verdict by $130,000, to $370,000. It then deducted 5% from $370,000 to arrive at $351,500. Apparently the trial court felt that the jury, contrary to instructions, had failed to deduct 5% from its award of $500,000, so the trial court made that deduction from its reduced award of $370,000. The railroad points out that there is no figure which can be reduced by 5% to yield exactly $500,000, and argues from this that the jury did not follow instructions. We think, however, the better view is that as a practical matter the jury did follow the court's instructions; that it reduced its award by 5% as it was instructed, and then simply rounded off the relatively small sum to arrive at an even $500,000. We hold, therefore, that the proper amount of the remitted judgment should be $370,000.

Second, our review of the record and of the matters discussed in this opinion per-

**740**

suades us that the remittitur should be conditional.[2] We hold, therefore, that defendant railroad is entitled to a new trial on damages only, unless within 15 days after issuance of this opinion plaintiff files with this court a consent to a remittitur reducing the amount of his verdict to $370,000.

We have considered the other grounds for a new trial urged by defendant and find them without merit.

Affirmed as modified but on conditions as set out in the opinion.

TODD, Justice (dissenting).

I would reverse the trial court. No reasons were articulated for granting the remittitur. This court should not speculate as to what motivated the trial judge. The verdict is well within the range of reasonable verdicts and therefore we should not interfere with the function of the jury.

I further would not allow the *"Liepelt* instruction." All the arguments used by the majority in disapproval of the "counter-*Liepelt"* instruction are applicable to the original instruction. The best procedure would prevent the use of both instructions. However, if one instruction is given, the other should also be given as a matter of fundamental fairness.

YETKA, Justice (dissenting).

I join in the dissent of Justice Todd.

---

**2.** We can do this. *See, e.g., Tanski v. Jackson,* 269 Minn. 304, 130 N.W.2d 492 (1964). While we have indicated the state trial court may grant an unconditional remittitur in some instances, *see Bowman v. Pamida, Inc.,* 261 N.W.2d 594, 596 n. 2 (Minn.1977), it can be argued that under Federal law, which governs a FELA action, there must be a conditional remittitur. *See* 11 Wright and Miller, Federal Practice and Procedure § 2815 (1973).