James L. SORENSON, Respondent,

v.

Melvin William KRUSE, Respondent,

L & M Realty, Appellant.

No. 49268.

Supreme Court of Minnesota.

May 16, 1980.

Ross M. Muir and James R. Carlson, Rochester, for appellant.

Peterson & Goodman and Dennis Peterson, Rochester, for Sorenson.

Louis M. Ohly, Dunlap, Keith, Collins, Towey, Finseth & Berndt, Robert R. Dunlap and Peter C. Sandberg, Rochester, for Kruse.

Heard before PETERSON, YETKA, and WAHL, JJ. and considered and decided by the court en banc.

WAHL, Justice.

Plaintiff James L. Sorenson brought this personal injury action for damages arising from an accident in which defendant Melvin William Kruse, operating an automobile during the course of his employment with defendant L & M Realty, made an unsignaled left turn in the path of two motorcycles, one of them driven by plaintiff. Over L & M's objection, the action was consolidated with one brought against the same defendants by Randy Lee Hagen, the driver of the other motorcycle. The jury found Kruse ninety-three percent causally negligent and found Sorenson seven percent causally negligent. It awarded Sorenson damages in the amount of $97,500.[1] From the judgment entered, L & M Realty, whose liability derives from Kruse's, appeals. We affirm.

On April 15, 1975, defendant Kruse, traveling north on Highway 63 north of Rochester, slowed and made a sudden left turn without signaling. He collided with plaintiffs Sorenson and Hagen, who were traveling at moderate speed in the southbound lane on their motorcycles and were about twenty-five feet from Kruse when he made his left turn. Sorenson's motorcycle struck the right side of the Kruse automobile in the southbound lane. The force of the impact threw Sorenson ten feet into the air, and he landed on the back of his helmet forty-four feet from the accident. Sorenson sustained compression fractures of the front and back of the first and second lumbar vertebrae, resulting in twenty percent permanent partial disability of his spine.

Hagen and Sorenson brought suit against Kruse and L & M Realty.[2] L & M tendered the defense of the action to its insurance carrier, Allstate Insurance Company, who retained counsel to represent L & M. That attorney answered the complaints for L & M and made cross claims in both actions against Kruse, seeking contribution or indemnity.

---

1. The jury found Kruse ninety-four percent causally negligent and Hagen six percent causally negligent in the consolidated case, which has not been appealed. Damages of $150,833.44 were awarded to Hagen.

2. Defendant Kruse, a real estate salesman, made his left turn at Book's Trailer Court, where he intended to pick up a Certificate of Registration for a mobile home. In an order dated February 1, 1977, the court ruled that Kruse was acting at the time of the collision in the course and scope of his employment with L & M Realty.

On October 7, 1977, the court denied L & M's motion to amend its answer to the Sorenson complaint in order to allege that Kruse was acting not as an employee but as an independent contractor, concluding that, under Minnesota law, a real estate salesperson cannot act as an independent contractor and that a broker is responsible as a matter of law for the acts of its salespersons. At the same time, the court granted plaintiff Hagen's motion to consolidate the Hagen and Sorenson cases for trial, finding that they presented common questions of fact and law.

By letter of February 16, 1978, the attorney retained by Allstate to represent L & M (hereinafter, "Allstate's attorney") notified all other attorneys involved in the Hagen and Sorenson cases that Allstate acknowledged Melvin Kruse as an insured under its general liability policy with L & M Realty and that, under that policy, Kruse was entitled to a defense of claims against him in excess of the limits of Kruse's personal automobile liability policy with State Farm Insurance Company. The cross claim brought by L & M against Kruse was never answered.

In contemplation of Allstate's acknowledgement of coverage, shortly before trial defendant Kruse and plaintiff Hagen signed a cash receipt and settlement agreement. Under the terms of this agreement, Kruse's personal liability insurer, State Farm, paid Hagen $50,000, the policy limit amount, and Hagen agreed that any additional amounts for which a jury found Kruse liable to him must be satisfied only from other liability insurance policies applicable to Kruse and not from personal assets. The agreement provided that it should not be construed as an admission of liability on the part of Kruse and that the $50,000 payment should not be construed as final satisfaction of Hagen's claims against Kruse. L & M Realty was not a party to the agreement. Over objection of all counsel, the court disclosed the settlement to the jury during the consolidated trial.

On the morning of the first day of trial, March 13, 1976, Kruse's own counsel, who had been retained to represent Kruse in the event he was held liable for amounts in excess of his State Farm coverage, moved to withdraw his representation, based on the fact that the Allstate coverage now available to Kruse had policy limits far in excess of all claims against him. At this time, Allstate's attorney informed the court and opposing counsel that on Friday, March 10, he had received a phone call from someone at Allstate's Chicago offices, informing him that Kruse was not in fact an insured under the L & M policy. Nevertheless, Allstate's attorney recognized that L & M's liability was derivative and stated positively that he would represent Kruse regardless of Allstate's posture. He stated:

Mr. Kruse worked for L & M Realty. The only way that L & M Realty can be found liable in this case is through the conduct of Mr. Kruse and that therefore rather than avoid—or to avoid that type of situation we have here, and that Allstate Insurance Company should have afforded a courtesy defense for Mr. Kruse because he was to be defended in the case anyway. So to solve that problem for everyone, I'm willing, at no charge, to afford defense to Mr. Kruse to the very best of my ability along with L & M Realty.

Several times, Allstate's attorney repeated his intention to represent Kruse, as well as L & M. When counsel for plaintiffs suggested that the posture of Allstate's attorney raised a potential conflict of interest, he made the following response:

PLAINTIFF'S ATTORNEY: Are you representing Mr. Kruse?

ALLSTATE'S ATTORNEY: I told you I'm representing Mr. Kruse.

THE COURT: The answer is he does represent Mr. Kruse, right?

ALLSTATE'S ATTORNEY: Right, I said that this morning.

PLAINTIFF'S ATTORNEY: Okay.

THE COURT: If there's any problem about conflict of interest between his insurance company and Allstate and Mr. Kruse, he must and does come down on the side of Mr. Kruse.

ALLSTATE'S ATTORNEY: And Kruse and L & M Realty correct, Your Honor.

PLAINTIFF'S ATTORNEY: How can you come down on the side of L & M and Kruse when you got a cross claim?

ALLSTATE'S ATTORNEY: At that time these questions had not been raised. The pleading is still there. I have a call into Allstate into that question as well as the other coverage question.

PLAINTIFF'S ATTORNEY: I don't see how you can assert a cross-claim between the two parties.

ALLSTATE'S ATTORNEY: Your Honor, that cross-claim was asserted before the Court ruled that Mr. Kruse was in the course and scope of his employment, and I suppose that makes our cross-claim moot.

THE COURT: I would think it does.

Thus, the cross-claim was tentatively resolved at trial as moot.

Three issues are raised by L & M Realty on this appeal:

1. Was it error for the trial court to disclose to the jury the settlement between plaintiff Hagen and defendant Kruse, where the Hagen and Sorenson cases were consolidated?

2. Did the trial court err in dismissing L & M's cross-claim against Kruse?

3. Is defendant L & M entitled to remittitur or a new trial because damages awarded to Sorenson were excessive?

1. L & M argues that the trial court's disclosure to the jury of defendant Kruse's settlement with plaintiff Hagen prejudiced L & M's defense in the consolidated Sorenson case. It is important to note the chronology of the relevant events: On October 7, 1977, the trial court granted plaintiff Hagen's motion to consolidate the trial of the two cases. On February 16, 1978, Allstate's attorney informed all counsel that Allstate had acknowledged Melvin Kruse as an insured under its liability policy with L & M Realty and would pay claims against Kruse in excess of his personal liability policy with State Farm, up to the L & M policy limits of $1 million. With this understanding, and knowing the limits of the Allstate policy, attorneys for plaintiff and for defendant signed the cash receipt and settlement agreement shortly before trial, under the terms of which State Farm tendered the face amount of its policy, $50,000, to plaintiff Hagen in exchange for Hagen's assurance that he would not hold Kruse personally liable for additional damages. Thus, any additional costs for which Kruse was found liable to Hagen were to be satisfied by additional applicable liability insurance coverage.

The cash receipt and settlement agreement which is the subject of the controversy here was thus signed with the understanding that Kruse was covered under the million-dollar Allstate policy. Also with this understanding, the attorney who had been retained to represent Mr. Kruse for any damage claims in excess of his $50,000 State Farm coverage, moved to withdraw his representation. The attorney representing Mr. Kruse for State Farm agreed to this withdrawal of representation only after he had received assurances from the attorney for both plaintiffs that their damage claims together would not exceed $1 million.

■ Because Allstate's acknowledgement of Kruse as an insured was the foundation for all of these actions—the settlement agreement itself, the withdrawal of Kruse's personal attorney, and State Farm's attorney's acquiescence in that withdrawal—all were thrown into jeopardy by Allstate's "eleventh-hour" change of position. An insurer seeking to disclaim liability must do so seasonably and may not delay its decision so long that the insured's rights are prejudiced. 7C Appleman, *Insurance Law and Practice* (Berdal ed.), § 4693 (1979). Although Allstate delayed just three weeks in denying liability after its attorney informed other counsel of its acceptance, prejudice to Kruse's defense can be found here, where the denial of liability came on the eve of trial and Kruse's "excess coverage" counsel had not prepared for trial but in fact intended to withdraw representation in re-

liance on Allstate's acceptance of Kruse as an insured. *See Liberty Mutual Insurance Co. v. O'Rourke*, 122 N.J.Super. 68, 298 A.2d 725 (1973); *Caprari v. Hartford Accident and Indemnity Co.*, 69 Misc.2d 354, 330 N.Y. S.2d 206 (1972). Plaintiff Hagen's rights, too, were prejudiced because he signed an agreement releasing defendant Kruse from personal liability.

Allstate's untimely denial of coverage is not at issue here, but serves only as background for the problem of submission of the Hagen/Kruse settlement to the jury in the consolidated trial. The trial court felt bound to reveal the settlement to the jury by this court's decision in *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548 (Minn.1977). In *Pacific Indemnity* (the "Miracle Mile" cases), lawsuits arising out of a shopping center fire by thirteen plaintiffs against four defendants were consolidated for trial. Several non-exclusive theories were advanced for the cause of the fire, and the jury found three defendants—the manufacturer of the furnace where the fire had originated, the tenant of the premises where the furnace was located, and the corporation which serviced the furnace—negligent in certain proportions. Prior to the beginning of testimony, but after the jury had been impaneled and sworn, all of the plaintiffs settled with two of the defendants, and the effect of the settlement on the parties' adversary relationships was fully revealed to the jury. 260 N.W.2d at 555–57.

On appeal, we approved the trial court's approach. First, we distinguished the *Pacific Indemnity* settlement from "Mary Carter" agreements and "loan receipt" agreements. We noted that the great difficulty caused by pretrial settlements is their effect on the adversary nature of the litigation. Because an alteration in the parties' adversary posture can lead to unfairness when the agreement is kept secret, disclosure to the jury is appropriate in order to assure a fair trial. 260 N.W.2d 557.

The situation here, however, differs substantially from that in *Pacific Indemnity*. As we noted there, the agreement did not affect the liability of non-assenting defendants, because all were charged with negligence on entirely distinct grounds. In this case, however, the liability of both defendants rises or falls on the performance of one allegedly negligent act. L & M Realty's negligence in this case is derivative only; thus, any admission of negligence on the part of Melvin Kruse will constitute an admission on the part of L & M. Furthermore, unlike in *Pacific Indemnity*, the agreement here did not truly release Kruse from liability. It merely provided that Hagen would not attach Kruse's personal assets in order to recover its judgment from him. Nor was there in the instant agreement, as there was in *Pacific Indemnity*, a requirement that the settling plaintiff return to the settling defendant any funds received for which the settling defendant is ultimately held not liable—a requirement which could tend to minimize the impact of the agreement as an admission of negligence.

As we noted in *Pacific Indemnity* and in *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn.1978):

> The extent to which a settlement should be disclosed to the jury will vary from case to case and must rest in the sound discretion of the trial court. The goal, of course, must always be to preserve the remaining parties' right to a fair trial under the circumstances.

269 N.W.2d at 922. In *Frey*, as in *Pacific Indemnity*, defendants' claimed negligence resulted from independent allegedly negligent acts; that is, the liability of one defendant did not derive from the liability of another, as it does in this case.

Disclosure of the release and settlement agreement here might well have prejudiced L & M's ability to defend against the claim that Melvin Kruse was negligent and that it was derivatively liable. Further, once the jury had found that Kruse was negligent in making the left turn which caused Hagen's injury, the question of his negligence in making the left turn which caused Sorenson's injury was concluded, as well. Thus, the conclusion is

warranted that the disclosure of the settlement in the consolidated cases denied defendant L & M Realty a fair trial in the Sorenson case. Although decisions regarding consolidation and admission of contested evidence are ones in which the trial court has broad discretion, *Frey v. Snelgrove*, 269 N.W.2d at 922; *Simchuck v. Fullerton*, 299 Minn. 91, 97, 216 N.W.2d 683, 688 (1974), such discretion must not be exercised so broadly as to sacrifice a fair trial for convenience and economy. The trial court's disclosure of the receipt and settlement agreement to the jury on these facts, coupled with its consolidation of the two cases in which the plaintiffs' claims were identical, was error.

The court, however, repeatedly instructed that the settlement had no effect on issues of liability and damages in this case, and the record contains substantial evidence which could convince the jury of Kruse's negligence quite apart from the Hagen agreement. The testimony established that Kruse made his unsignaled left turn where Hagen and Sorenson were only twenty-five feet from him and could do little to avoid collision. That Kruse's negligence in the Sorenson case was established by independent evidence is suggested by the fact that defendant L & M has not appealed from the judgment against it in the Hagen case.

Disclosure of the settlement with Hagen in the consolidated action was error. The disclosure we advocated in *Pacific Indemnity* is not appropriate where the liability of the non-settling defendant derives from that of the settling defendant, so that, once the liability of the settling defendant has been established, the liability of the non-settling defendant is concluded, as well. However, the error was nonprejudicial in this case because independent evidence in the record could establish Kruse's causal negligence in the mind of the jury.

█ 2. We find no error in the trial court's dismissal of L & M's crossclaim against Kruse. L & M's insurer, Allstate, initially acknowledged Kruse as an insured under the L & M policy. That acknowledgement prompted Hagen, Kruse, and Kruse's primary insurer to sign the settlement agreement which has been discussed. Further, it prompted the withdrawal of the attorney representing Kruse for liability excess to his primary coverage and plaintiffs' and State Farm's attorneys' consent to that withdrawal. As we noted above, Allstate's last-minute denial of coverage would have prejudiced Kruse's defense, had Allstate's attorney not voluntarily represented him. Under these circumstances, we are of the opinion that Allstate would be estopped from making such a last-minute denial.

With Allstate estopped from denying coverage, any claim between two insureds under the same policy collapses. Further, L & M's crossclaim must be denied because of the conflict of interest raised where both parties to the crossclaim were defended in the underlying action by the same attorney. That attorney himself suggested that his simultaneous representation of L & M and Kruse effectively "mooted" the crossclaim. It was properly dismissed.

█ 3. Finally, we find no error in the trial court's denial of remittitur. Recent Minnesota decisions on circumstances under which remittitur of a jury verdict may be granted establish that the trial court's judgment may be reversed only where there has been a clear showing of abuse of discretion. Although this court has cautioned that the trial court must carefully scrutinize verdicts or reversals would follow, *Cox v. Chicago, Rock Island & Pacific Railroad Co.*, 250 Minn. 187, 194–96, 84 N.W.2d 263, 268 (1957), the impact of that caution seems to be not that trial courts must take care that verdicts are accurate compensation, but that trial courts must take care to demonstrate that they have made some examination and explanation when the size of a jury verdict is challenged. Thus, in *Tanski v. Jackson*, 269 Minn. 304, 130 N.W.2d 492 (1964), where defendant's counsel argued that the jury made its award in response to its overhearing plaintiff's counsel state the defendant's liability insurance policy limits, this court reluctantly granted remittitur, noting that the trial court's memorandum made no ref-

erence to the issue of excessive damages whatever. 269 Minn. at 311, 130 N.W.2d at 497. Where the trial court grants remittitur, or refuses to grant it, noting its reasons, this court is unlikely to tamper with that determination on appeal. *See Thill v. Modern Erecting Co.*, 272 Minn. 217, 136 N.W.2d 677 (1965); *Bisbee v. Ruppert*, 306 Minn. 39, 235 N.W.2d 364 (1975); *Sandt v. Hylen*, 301 Minn. 475, 224 N.W.2d 342 (1974).

■ Whether a jury award is excessive is a determination which must be made on the peculiar facts of each case. Factors which may be considered include the pain which the plaintiff has suffered or will suffer, his life expectancy and loss of earning capacity, cosmetic disfigurement, pursuit of the amenities of life, any permanent partial disability involved, and the inflationary trend of the economy. Here, plaintiff Sorenson was hospitalized for eight days and spent several weeks in a body cast. Experts for both parties testified that Sorenson, a 27-year-old man, suffered a fifteen to twenty percent permanent partial disability of the spine. There was evidence that Sorenson's injuries affected his work output as a painter and carpenter. Under these circumstances, the award of $97,500 was not excessive.

Although the trial court made no specific analysis of the evidence concerning Sorenson's damages, its post-trial order indicates that it considered L & M's claim for remittitur. The record does not clearly demonstrate that the trial court abused its discretion in denying L & M's post-trial motion for remittitur.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.