James D. ROEMER, et al.,
Respondents,

v.

David E. MARTIN, M.D., et al.,
Petitioners, Appellants,

Tri–State Insurance Company,
Intervenor, Respondent.

No. C5–87–2351.

Supreme Court of Minnesota.

May 19, 1989.

Robert Dunlap, Dunlap, Keith, Finseth, Berndt & Sandberg, Rochester, for petitioners, appellants.

Larry J. Peterson, St. Paul, for respondents.

Fitch, Johnson, Larson & Walsh, Dianne Walsh, Minneapolis, for intervenor, respondent.

SIMONETT, Justice.

We reverse the court of appeals in this medical malpractice case and reinstate the jury's finding that the doctor's negligence was, not a cause of plaintiff's injuries.

In October 1981, plaintiff James D. Roemer injured his right thumb, and defendant David E. Martin performed surgery to repair the severed tendon. Subsequently, Mr. Roemer and his wife sued Dr. Martin and his clinic, claiming Dr. Martin had negligently injured the median nerve during the surgery. The jury found that Dr. Martin had been negligent but his negligence was not a cause of plaintiff's injuries. The trial court denied plaintiffs' post-trial motions, stating there was "ample support in the trial record" for the jury's verdict of no causation. In an unpublished opinion, the court of appeals reversed and ruled there was causation as a matter of law. We granted the doctor's petition for further review and now reinstate the jury's finding.

In performing the surgery, Dr. Martin first made an incision at the injured thumb site, but he was unable to locate the end of the severed flexor tendon which had retracted; he did observe, however, a partial laceration of the nerve supplying sensation to the tip of the thumb. The doctor then made a transverse incision across the wrist and, after much probing, was able to find and reconnect the tendon. Following this surgery, plaintiff continued to experience pain and discomfort, and a few weeks later went to the Mayo Clinic for a second opinion. In November 1981, the Mayo Clinic

doctor performed exploratory surgery at the thumb and wrist levels; scarring was discovered and, at the wrist level, two discontinuous fascicles of the median nerve. After this second surgery, an infection developed in the thumb wound which lasted for about a year. Almost 3 years after the second surgery, plaintiff had further hand surgery for a carpal tunnel release and again scar tissue around the median nerve was removed. Plaintiff had previously been diagnosed in 1976 as having carpal tunnel syndrome, a condition which involves compression of the median nerve. Following this series of events, Mr. Roemer has had pain, numbness, loss of motion, burning and sweating sensations in his right hand, wrist and forearm.

Plaintiffs' theory, argued to the jury, was that Dr. Martin was negligent in repairing the tendon at the thumb site, or in making a transverse instead of a longitudinal incision at the wrist, or in the manner of performing the surgery at the wrist level; and, further, that one or more of these negligent acts so injured the median nerve as to cause plaintiff's hand, wrist, and forearm disabilities.

There was much expert testimony on what may have injured the median nerve. Plaintiffs' expert testified, "Everything that's happened to this hand up to date is a factor in this irritation of the median nerve * * *. Anything that puts additional pressure or creates additional scar [sic] is a factor." Among the factors mentioned were the original accident to the thumb, the first surgical cuttings, swelling from the original injury, the subsequent surgeries, scarring, and the infection following the second surgery. Defendant's expert testified, "[I]t's very hard to know to which degree any one of these could contribute, but, in fact, all could be contributory." Defendant's expert also thought the extent and distribution of numbness and weakness in the hand would have required a major nerve cut, but the operative report of Dr. Martin's surgery did not reflect such a cut. "Therefore," said the expert, "one of the other alternatives or other diagnoses which is as likely or more likely, is a compression neuropathy of the median nerve as a result of, for example, carpal tunnel syndrome."

The court of appeals reversed the trial judge's denial of plaintiffs' post-trial motions, stating:

> Expert testimony both by Dr. Dobyns (for plaintiff) and Dr. Tountas (for defendant) indicated that the cutting of the nerves by Dr. Martin was at least a concurrent cause for Roemer's symptoms; none of the expert testimony excluded it as a cause or "factor." As such, the jury's verdict is perverse and not supported by the evidence.

The court of appeals then ruled that causation had been established as a matter of law. The issue before us, then, is whether this ruling is correct or whether causation was a fact issue to be left to the jury for resolution. We think it was a fact issue.

■ The jury was given the standard causation instruction, namely, "[A] direct cause is a cause which had a substantial part in bringing about the harm or injury either immediately or through happenings which follow one after another." *See* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice, JIG Civil* 140 (3d ed.1986). This is the "substantial factor" test used in this state. *See, e.g., Flom v. Flom,* 291 N.W.2d 914, 917 (Minn.1980). The burden of proof to show causation is, of course, on plaintiffs.

■ The court of appeals apparently reasoned that because the median nerve had been to some degree injured by Dr. Martin's surgery and because the jury had found Dr. Martin negligent, Dr. Martin's negligence "was at least a concurrent cause for Roemer's symptoms." Apparently the court of appeals felt that more than one cause, including Dr. Martin's negligence, had substantially contributed to plaintiff's ultimate disabilities.[1] Before a particular factor can be said to be a concurrent cause, it must, first of all, be established that it is a cause.

■ The jury had a number of candidates for the median nerve injury and the ultimate resultant symptoms. While the medical experts could not definitely exclude any of the suggested causes, neither was

1. Concurring causes are direct causes which act contemporaneously or so nearly together that

there any unanimity in identifying any cause as more likely than not to have been a substantial factor in causing plaintiff's symptoms. This presented a classic fact issue for the jury. In electing to find no causation, the jury could have found that Dr. Martin's conduct, insofar as it was negligent, was not a substantial factor in causing plaintiff's symptoms; that plaintiff's problems were more likely attributable to, say, his carpal tunnel syndrome or the infection following the second surgery. Or the jury could have found that the evidence on causation rose only to the level of conjecture and that plaintiff had failed to carry his burden of proof.[2]

Plaintiffs rely heavily on *Roman v. Minneapolis Street Railway Co.*, 268 Minn. 367, 129 N.W.2d 550 (1964), where we said one cause may be sufficient to establish legal liability for damages even though other causes may have joined in producing the final result; liability, we said, could be established by showing defendant's negligence "was either the sole cause or a substantial contributing cause of the injury." *Id.* at 379–80, 129 N.W.2d at 558. This, of course, is sound law. Plaintiff's problem here, however, is not with the law but with his proof. He simply was unable to persuade the jury that Dr. Martin's negligence was a substantial contributing cause of his injury.[3]

A jury verdict will not be set aside unless it is "manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict." *Vanderweyst v. Langford*, 303 Minn. 575, 576, 228 N.W.2d 271, 272 (1975) (jury finding on

causation not to be disturbed). The verdict will be sustained if it is possible to do so on any reasonable theory of the evidence. *Bergemann v. Mutual Serv. Ins. Co.*, 270 N.W.2d 107, 109 (Minn.1978). Under these standards of review, the jury's finding of no causation may not be set aside.

Reversed, and the jury's verdict reinstated.

KEITH, J., took no part in the consideration or decision of this case.

---

the chain of causation is not broken, and together cause an injury which would not have resulted in the absence of either one. *See Dyson v. Schmidt*, 260 Minn. 129, 139, 109 N.W.2d 262, 269 (1961). 4 Minn. Dist. Judges Ass'n, *Minnesota Practice, JIG Civil* 141 (3d ed.1986).

2. The jury was also instructed on superseding cause. Defendant's counsel argued to the jury that Dr. Martin had disturbed only two fascicles of the median nerve in the wrist area, and that there was no evidence plaintiff's problems were attributable to this relatively minor disturbance; he argued that the blame for plaintiff's symptoms should be placed on the Mayo Clinic doctors. Plaintiffs' counsel, of course, argued to the contrary.

3. Interestingly, defendant had requested an instruction on concurrent cause, but, without objection from plaintiffs, the trial court denied the request. Because Dr. Martin was the only doctor named as a defendant and only his liability was at issue in the lawsuit, it would seem there was no need for an instruction on concurrent causes. Being aware, however, that defendant's trial strategy was to put the blame on others (*see* footnote 2, *supra*), plaintiffs might have asked for a cautionary instruction advising the jurors, much as stated in the first sentence of JIG No. 141, that "[t]here may be more than one direct cause of an injury."