Eugene J. BENIEK, et al., Appellants,

v.

TEXTRON, INC., et al., Respondents.

No. C3-91-1302.

Court of Appeals of Minnesota.

Jan. 7, 1992.

Reviews Denied Feb. 19, 27, 1992.

H. Morrison Kershner, Hefte, Pemberton, Sorlie & Rufer, Fergus Falls, Kevin S. Carpenter, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for appellants.

Lawrence R. King, Barbara R. Hatch, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for respondents.

Considered and decided by HUSPENI, P.J., and PETERSON and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

Appellants Eugene and Barbara Beniek sued respondents Textron, Inc. and Homelite, Inc., a subdivision of Textron, for damages resulting from injuries Eugene suffered while using a chain saw manufactured by Homelite. A jury found there was a defect in the chain saw design that caused Eugene's injuries. Although the jury found that Homelite provided adequate warnings in the owner's manual, it found that Homelite failed to provide adequate post-sale warnings about the dangerousness of the chain saw. The jury, however, failed to answer whether this breach of duty caused Eugene's injuries. The trial court entered judgment for the Benieks and denied the Benieks' post-trial motion for a new trial on the issue of punitive damages. The trial court also denied Homelite's motions for a judgment notwithstanding the verdict or a new trial. The Benieks appeal from the order denying their post-trial motions. Homelite filed a notice of review challenging the trial court's order denying their post-trial motions. We affirm in part, reverse in part and remand.

## FACTS

In March of 1978, Eugene purchased a used Homelite Model 150 chain saw from a neighbor. He maintained the chain saw in an operational condition and never had any major problems with it. When he purchased the Model 150 chain saw, Eugene did not read the owner's manual because he was familiar with the general operation and use of chain saws. Although the owner's manual for the Model 150 chain saw included a warning about the dangers of chain saw kickback, Eugene did not read this section of the manual.

On September 28, 1984, Eugene went to his mother's house to cut down a tree in her yard. After the tree fell, Eugene proceeded to cut off the limbs of the tree. While wearing leather gloves, he held the chain saw in the position suggested in the owner's manual. As he was cutting a limb close to the ground, the chain saw "kicked back" and severely damaged his face. The chain saw severed his eye, cheek, mouth, jaw bone, and several teeth on the right side of his face. As a result of the accident, Eugene incurred a large number of medical expenses.

Eugene brought a products liability action against Homelite alleging the Model 150 chain saw was defectively designed because it did not have a chain break or a tip guard and that this defect was a direct cause of his injuries. Eugene also alleged Homelite failed to provide adequate warnings about this defect and that Homelite had a post-sale duty to warn about the dangers of the chain saw. His wife, Barbara, brought a loss of consortium claim against Homelite. The Benieks subsequently amended their complaint to include a claim for punitive damages. After the close of its case, Homelite moved the court to dismiss the Benieks' punitive damages claim. The trial court directed a verdict in favor of Homelite on the punitive damages claim.

At trial, the Benieks offered extensive expert testimony on the safety devices available to prevent chain saw "kickback." "Kickback" is the violent upward and rearward movement of the cutting portion of the saw, resulting from the chain saw end or tip coming in contact with fixed objects. The experts testified that the chain saw was unreasonably dangerous and defective because it was manufactured without a chain break or tip guard safety device. The experts further testified that Homelite knew about chain break and tip guards in 1974, the year the Model 150 chain saw was manufactured. Homelite applied for a patent for a chain break in 1974 and installed tip guards on all chain saws manufactured in and after 1976. Homelite knew about tip guards since 1968. According to the Benieks' experts, if Homelite equipped the

---

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI, § 2.

Model 150 chain saw with a tip guard, it would have prevented Eugene's injuries.

The jury returned a special verdict in favor of the Benieks, concluding that the Model 150 chain saw's defective design caused Eugene's injuries. The jury also found Homelite failed to provide adequate post-sale warnings, but failed to answer the special verdict question regarding the causal connection between Homelite's failure to provide post-sale warnings and Eugene's injuries. After the trial, the Benieks withdrew their post-sale duty-to-warn claim and moved for a new trial on the issue of punitive and future damages. The Benieks also moved for an award of costs and disbursements in the amount of $13,-867.17. Homelite moved for a judgment notwithstanding the verdict or a new trial and remittitur of damages.

The trial court denied all post-trial motions and awarded the Benieks $4,384.82 for costs and disbursements. The Benieks appeal from the order denying their post-trial motion and the award of costs and disbursements. Homelite filed a notice of review.

### ISSUES

1. Did the trial court err in granting Homelite's motion for a directed verdict on the issue of punitive damages?

2. Did the trial court abuse its discretion in its award of costs and disbursements?

3. Did the trial court err in concluding that the admission of post-sale duty-to-warn evidence did not affect the jury's finding of a defect in design?

### ANALYSIS

When examining a trial court's denial of a new trial motion, an appellate court is subject to a stringent standard of review. "On review, this court merely considers whether the trial court exercised reasonable discretion in denying the motion for a new trial." *Red River Spray Serv., Inc. v. Nelson*, 404 N.W.2d 332, 334 (Minn.App. 1987). The standard of review for a JNOV is "whether there is any competent evi-

dence reasonably tending to support the verdict." *Leach v. Estate of Dahl*, 419 N.W.2d 93, 97 (Minn.App.1988) (quoting *Peppin v. W.H. Brady Co.*, 372 N.W.2d 369, 374 (Minn.App.1985)), *pet. for rev. denied* (Minn. Apr. 4, 1988).

1. The Benieks contend that the trial court erred when it dismissed their punitive damages claim. They assert that Homelite's failure to install a safety device on the chain saw when it was manufactured is evidence of willful disregard for the safety of others.

■ In reviewing a verdict directed by the trial court, this court must determine whether the directed verdict was granted in a case where

(1) in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case.

*J.N. Sullivan & Assoc., Inc. v. F.D. Chapman Constr. Co.*, 304 Minn. 334, 336, 231 N.W.2d 87, 89 (Minn.1975). Even if some evidence supports the adverse party, a trial court is to "direct a verdict for the party in whose favor the evidence is overwhelmingly predominant." *Alevizos v. Metropolitan Airports Comm'n*, 452 N.W.2d 492, 502 (Minn.App.1990), *pet. for rev. denied* (Minn. May 11, 1990).

Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others. A defendant has acted with deliberated disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and: (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn.Stat. § 549.20, subd. 1 (1990). In order to impose the extreme punishment and deterrence of punitive damages, there must be a maliciousness, an intentional or willful failure to inform or act. *Wikert v. Northern Sand and Gravel, Inc.*, 402 N.W.2d 178, 183 (Minn.App.1987), *pet. for rev. denied* (Minn. May 18, 1987).

■ The Benieks failed to present clear and convincing evidence that Homelite's conduct was malicious. Homelite was the first chain saw manufacturer in this country to install a tip guard on all of its chain saws manufactured after 1976. Even though Homelite knew about chain saw kickback in 1968 when it first started research on a safety tip, this fact does not provide evidence of maliciousness. In fact, the evidence shows that Homelite actively sought ways to prevent the dangers associated with its product. Because there was no evidence that demonstrated Homelite acted with a malicious disregard for the rights and safety of others, the trial court properly granted Homelite's motion for a directed verdict.

2. Homelite contends that the trial court erred in admitting into evidence testimony regarding its post-sale duty to warn. Even though the jury did not find that a failure to provide post-sale warnings caused Eugene's injuries, Homelite contends that this evidence prejudiced the jury's finding of a defect in the design of the Model 150 chain saw because this evidence was based on subsequent remedial measures.

■ It is within the broad discretion of the trial court to admit or exclude evidence. *Reinhardt v. Colton*, 337 N.W.2d 88, 93 (Minn.1983). A party must demonstrate prejudicial error to be entitled to a new trial on the grounds of improper evidentiary rulings. *Midway Center Assoc. v. Midway Center, Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (Minn.1975).

■ The evidence regarding the post-sale duty to warn showed that Homelite installed a safety tip on all chain saws manufactured in and after 1976. The trial court's admission of this evidence was relevant to the issue of the feasibility of a safer design when Homelite manufactured the Model 150 chain saw. "The trial court is in the best position to assess the quality of evidence." *Becker v. Commissioner of Public Safety*, 374 N.W.2d 303, 305 (Minn. App.1985). In this case, the admission of post-sale duty-to-warn evidence did not prejudice Homelite because other evidence showed design defectiveness. *See Kallio v. Ford Motor Co.*, 407 N.W.2d 92, 98 (Minn.1987). For example, several experts testified that the Model 150 chain saw's design was defective because it was not equipped with a safety device to prevent chain saw kickback. These experts testified that Homelite knew about the benefits of a chain saw tip guard as early as 1968 but continued to manufacture chain saws without this safety device until 1976.

■ Furthermore, the admission of post-sale duty-to-warn evidence did not violate Minn.R.Evid. 407 prohibiting the admission of a manufacturer's subsequent remedial measures after an event. In this case, the evidence regarding the post-sale duty to warn related to Homelite's actions before Eugene's accident. The accident was the event contemplated by the rule. *See* Minn.R.Evid. 407.

Homelite raised several other issues on appeal. Homelite contends that the trial court erred in not granting a new trial based on juror misconduct and a remittitur for the damages awarded to Barbara. Homelite also maintained the jury's verdict was not supported by the evidence. We have carefully reviewed these issues and find that the trial court acted within its discretion.

3. The Benieks claim they incurred costs and disbursements of $13,867.17 for expert witnesses, a videotaped deposition, printing trial exhibits, a witness's video demonstration, travel expenses, and deposition expenses. The trial court awarded $4,384.82 to cover these costs.

■ "In every action in a district court, the prevailing party * * * shall be allowed reasonable disbursements paid or incurred." Minn.Stat. § 549.04 (1990). "[D]isbursements shall be stated in detail

and verified by affidavit." Minn.R.Civ.P. 54.04. When reviewing a request for costs and disbursements, the district court must make sufficient findings of reasonable and necessary costs and disbursements. *Stinson v. Clark Equip. Co.*, 473 N.W.2d 333, 338 (Minn.App.1991), *pet. for rev. denied* (Minn. Sept. 13, 1991); *see also Jonsson v. Ames Constr., Inc.*, 409 N.W.2d 560, 563 (Minn.App.1987), *pet. for rev. denied* (Minn. Sept. 30, 1987). To make these findings, the district court must "take oral testimony of all costs and disbursements with full opportunity for both direct and cross-examination so a full record is available for review." *Stinson*, 473 N.W.2d at 338.

Here, the trial court did not take oral testimony of all costs and disbursements to determine what expenditures were reasonable and necessary. For this reason, we are remanding this issue to the trial court for further findings.

## DECISION

The trial court properly dismissed appellant's claim for punitive damages. The trial court's admission of evidence regarding the respondents' post-sale duty to warn did not affect the jury's finding of a defect in the chain saw design. The trial court did not violate Minn.R.Evid. 407 by admitting post-sale duty-to-warn evidence because Rule 407 only prohibits the admission of evidence relating to Homelite's subsequent remedial measures after the accident which gave rise to Eugene's cause of action. The trial court must make further findings regarding the reasonableness of the Benieks' requested costs and disbursements.

Affirmed in part, reversed in part and remanded.