**Richard A. MYERS, et al., Respondents,**

**v.**

**HEARTH TECHNOLOGIES, INC., f/k/a Heatilator, Inc., Defendant and Third–Party Plaintiff, Appellant,**

**v.**

**Energy Plus, Inc., Respondent.**

**No. C7–00–596.**

Court of Appeals of Minnesota.

Jan. 22, 2001.

Michael S. Kreidler, Stich, Angell, Kreidler, Brownson & Ballou, P.A., Minneapolis, MN, for respondents Richard and Sandy Myers.

David M. Johnson, Thibodeau, Johnson, Feriancek & Costley, PLLP, Duluth, MN, for appellant.

John D. Kelly, Robin C. Merritt, Hanft Fride, P.A., Duluth, MN, for respondent Energy Plus.

Considered and decided by SCHUMACHER, Presiding Judge, TOUSSAINT, Chief Judge, and AMUNDSON, Judge.

## OPINION

SCHUMACHER, Judge

Respondents Richard A. and Sandy Myers (the Myers) sued appellant Hearth Technologies, Inc., f/k/a Heatilator, Inc., and respondent Energy Plus, Inc. for negligence and products liability. After a jury trial, the trial court denied directed verdict motions, and the jury found Hearth liable. Hearth moved for a new trial on several grounds, a new trial on damages, or for a remittitur. The trial court denied the motion. We affirm.

## FACTS

In 1994 the Myers purchased a gas fireplace insert called a DVi–10 manufactured by Hearth from Energy Plus, which also installed it. Part of the DVi–10 was a two-part venting system installed in the chimney: one vent drew air from the outside for combustion; the other was an exhaust vent. The unit was designed to draw all air needed for operation from outside the home; as a result, the doors to the unit were designed to be airtight.

When Hearth designed the DVi–10, it realized that the pilot light might sometimes extinguish during normal use, so it was important to design the unit to prevent the accumulation of an explosive amount of gas in such situations. As a result, it installed a thermopile in the unit to sense when the pilot light had gone out and shut off the flow of gas to the unit. The thermopile in the DVi–10 was designed to halt the flow of gas to the unit within three minutes of the pilot light going out. The instructions for the DVi–10, however, do not specifically address the situation where the pilot light goes out during normal use. The instructions do address the situation in which the pilot light goes out when the user is starting the unit for the first time or at the start of a new season. In such a situation, the instructions tell the user to turn the valve to OFF and wait five minutes before relighting the pilot light.

Shortly after bringing the DVi–10 to market, Hearth learned of numerous complaints that the pilot light on the unit would extinguish during normal use because the unit was not getting enough air to operate. To attempt to correct this problem, in early 1995 Hearth sent its distributors Technical Bulletin No. 3, which described a new method of installing the venting that was designed to prevent the problem. Hearth did not contact purchasers of the unit, and the Myers's unit was not retrofitted to incorporate this new venting method.

In fall 1995, Hearth began selling the DVi–40 fireplace insert. This unit incorporated a thermopile that would halt the flow of gas to the unit within 30 seconds of the pilot light going out. Even though the unit was designed to allow less gas to build up in the event the pilot light went out, Hearth also changed the instruction manual. The instructions for the DVi–40, unlike those for the DVi–10, specifically address the situation where the pilot light goes out during normal use. The DVi–40 instructions tell the user in such a situation to wait ten minutes before attempting to relight the pilot light and to remove the airtight glass door before doing so, an instruction not given in the DVi–10's manual.

On October 20, 1997, Richard Myers was watching a hockey game on television when the pilot light in his DVi–10 fireplace insert went out. He turned off the gas valve to the pilot light, then waited for about five minutes, watching the game as he waited. When he then attempted to relight the pilot light, the unit exploded. Richard Myers was seriously injured by the explosion, which left him legally blind in his right eye. The Myers sued Hearth and Energy Plus, obtaining a $1.2 million jury verdict against Hearth. Hearth appeals the denial of its posttrial motions.

## ISSUES

1. Did the trial court abuse its discretion by admitting evidence of the changed instructions?

2. Did the trial court err by denying Hearth's motion for directed verdict against Energy Plus?

3. Did the trial court abuse its discretion by denying Hearth's motion for a new trial on damages or for remittitur?

4. Did the trial court err by awarding preverdict interest on the past general damages award?

## ANALYSIS

 The decision to grant a new trial lies within the sound discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. *Halla Nursery, Inc. v. Baumann–Furrie & Co.*, 454 N.W.2d 905, 910 (Minn.1990). We will reverse a jury's verdict only if it is "manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict." *Roemer v. Martin*, 440 N.W.2d 122, 124 (Minn.1989) (quotation omitted).

1. Hearth first challenges the district court's decision to allow the Myers to introduce evidence concerning Hearth's changed instructions for the DVi 40. Hearth argues that the evidence of the changed instructions is inadmissible for three reasons: (1) it is irrelevant; (2) it violates Minnesota Rule of Evidence 403; and (3) it is barred by Minn. R. Evid. 407 as evidence of a subsequent remedial measure.

■ Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. One of the Myers's causes of action is breach of post-sale duty to warn. It is undisputed that well before the Myers's explosion, Hearth knew of a design defect on the DVi–10 that sometimes resulted in oxygen starvation in the unit and the pilot light extinguishing. Hearth sent a technical bulletin to its distributors concerning the problem, but did not contact purchasers of the unit. Hearth's expert witness opined that the Myers's pilot light extinguished on the night of the explosion because of an air starvation problem.

In *Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826 (Minn.1988), the Minnesota Supreme Court found that one of the factors relevant to a post-sale failure-to-warn claim is whether the seller either knows or reasonably should know that the product poses a substantial risk of harm. *Id.* at 833; *see also* 4A *Minnesota Practice* CIVJIG 75.40 use note (1999). A jury could well infer from the changed instructions that Hearth knew that the venting problem on the DVi–10, which caused pilot lights to extinguish during normal use, posed a substantial risk of harm to users, and it therefore made the changes in its instructions to reduce that risk. The fact that Hearth changed the instructions would allow a reasonable jury to find a fact of consequence to the determination of the Myers's post-sale failure-

to-warn claim. Therefore, the evidence about the changes is relevant. Because we assume the jury disbelieved any testimony in conflict with the result it reached, we reject Hearth's argument that its testimony demonstrated the irrelevance of the changes. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978).

■ Hearth also argues that the trial court erred in not excluding evidence of the changes under Minnesota Rule of Evidence 403. It argues that admitting evidence of the changes

> allowed Myers' lawyer to argue squarely that the changes were substantive evidence of the inadequacy of the earlier manual, even though the law requires that the product be judged at the time of the manufacture.

But events that occur after manufacture—such as Hearth's changing the instructions—can be relevant to a determination whether the product (here, the initial instructions) was adequate as of the time of the manufacture. We will reverse a trial court's determination under rule 403 only when the trial court has "clearly abused" its discretion. *Wagner v. Thomas J. Obert Enter.*, 396 N.W.2d 223, 229 (Minn.1986). Because the evidence is clearly probative and Hearth has failed to show that it presented any significant danger of unfair prejudice, the trial court did not abuse its discretion by admitting the evidence.

As part of its rule 403 argument, Hearth also argues that the trial court erroneously applied a "presumption of admissibility," thus justifying reversal. But the trial court statement to which Hearth objects is a mere reflection that in close cases the court may properly exercise its discretion in favor of allowing relevant evidence. Such an approach comports with rule 403, which provides that relevant evidence may only be excluded "if its probative value is *substantially* outweighed by the danger of unfair prejudice." Minn. R. Evid. 403 (emphasis added). Hearth's argument

that the trial court applied a "presumption of admissibility" is unfounded.

■ Hearth next argues that evidence of the changes was inadmissible under Minnesota Rule of Evidence 407, which bars evidence of subsequent remedial measures under certain circumstances. But the changes were made well before the explosion that injured Richard Myers. (Hearth's own representative provided testimony from which the jury could have concluded it was true.) As a result, the changes were not subsequent remedial measures within the meaning of the rule. *See Beniek v. Textron, Inc.,* 479 N.W.2d 719, 723 (Minn.App.1992) ("The accident was the event contemplated by the rule."), *review denied* (Minn. Feb. 19, 27, 1992). Nonetheless, Hearth argues that the public policy underlying the rule supports its application in this situation, citing the following statement by the Minnesota Supreme Court:

> Better protection is afforded the public by encouraging manufacturers to pursue actions to correct perceived design flaws without fear that the corrections will be used by plaintiffs to raise the inference that the manufacturer has admitted the product's defect by altering the product.

*Kallio v. Ford Motor Co.,* 407 N.W.2d 92, 98 (Minn.1987).

Hearth's reliance on *Kallio* is misplaced, however, because *Beniek* specifically decides the issue, while *Kallio* does not. Furthermore, the *Beniek* court was familiar with *Kallio,* which is cited in the paragraph of the *Beniek* opinion immediately preceding the one containing the holding on rule 407. *Beniek,* 479 N.W.2d at 723. The trial court did not err by refusing to exclude the evidence of the changes under rule 407.

■ 2. Hearth contends that the district court erred by denying its motion for a directed verdict against Energy Plus. Hearth claims that Energy Plus was negligent because one of its employees installed the fireplace insert in such a way that instruction plates that were supposed to hang from a chain inside the fireplace insert were instead pinned to the back of the unit by a screw, so that they could not be read.

■ In an appeal from a denial of a motion for a directed verdict, this court is to review "whether the evidence and its inferences could have reasonably sustained a contrary verdict." *Woodrow v. Tobler,* 269 N.W.2d 910, 917 (Minn.1978). The basic elements of a negligence claim are (1) a duty; (2) a breach of that duty; (3) proximate cause; and (4) an injury. *Johnson v. State,* 553 N.W.2d 40, 49 (Minn. 1996). In this case, there was testimony that Richard Myers read and understood the instruction manual that came with the DVi 10 and evidence that the instructions on the instruction plates were substantially the same as those found in the manual. Under these circumstances, a reasonable factfinder could conclude that the failure to install the unit in such a way that the instruction plates would be visible was not the proximate cause of the explosion, and that Energy Plus was therefore not liable for negligence. The trial court did not err in denying Hearth's motion for a directed verdict against Energy Plus.

■ 3. Hearth next challenges the trial court's denial of its motions for a new trial on damages or for remittitur. A trial court may grant a new trial because of excessive damages that appear to have been given under the influence of passion or prejudice or are not justified by the evidence. Minn. R. Civ. P. 59.01(e), (g). A trial court possesses "the broadest possible discretion in determining whether a new trial should be granted for excessive damages." *Bisbee v. Ruppert,* 306 Minn. 39, 48–49, 235 N.W.2d 364, 371 (1975). Likewise, a trial court exercises discretion in granting or denying remittitur, and appellate courts will not reverse unless there was "a clear abuse of discretion." *Kwapien v. Starr,* 400 N.W.2d 179, 184 (Minn. App.1987).

■ Hearth argues that our standard of review is "conditioned" on the trial court providing an explanation of its reasons for denying Heath's motion for a new trial on damages or remittitur, and the trial court's failure to do so requires that we, "at minimum, remand the matter for an analysis of those issues." To support this conclusion, Hearth relies on *Kamrath v. Suburban Nat'l Bank,* 363 N.W.2d 108 (Minn.App. 1985), which states that the "trial court's judgment regarding remittitur is entitled to great deference when the court carefully examines the verdict and explains its decision." *Id.* at 112. The *Kamrath* court supports that statement by citing *Sorenson v. Kruse,* 293 N.W.2d 56 (Minn.1980). At first glance, *Sorenson* appears to support the *Kamrath* decision and Hearth's position, cautioning that trial courts should explain their decisions on remittitur or risk reversal. *Id.* at 62–63. Nonetheless, the supreme court in *Sorenson* went on to affirm the trial court's denial of the motion for remittitur even though the trial court performed no such specific analysis. *Id.* at 63; *see also* Minn. R. Civ. P. 52.01 ("Findings of fact and conclusions of law are unnecessary on decisions on motions pursuant to Rule 12 or 56 or any other motion except as provided in Rule 41.02 [involuntary dismissal].") Based on *Sorenson* and rule 52.01, therefore, the trial court's failure to explain its reasons for its decision on the motion for new trial on damages or for remittitur does not require us to alter our standard of review or remand.

■ The jury awarded the Myers $28,000 for future medical expenses. Hearth contends that the amount is excessive, pointing out, among other things, that the Myers's counsel only asked for $13,000 in closing arguments. To justify an award of future medical expenses, the plaintiff must show that future medical treatments will be required and must establish the amount of the damages through expert testimony. *Krutsch v. Walter H. Collin GmBh Verfahrenstechnik Und Maschinenfabric,* 495 N.W.2d 208, 213 (Minn.App.

1993), *review denied* (Minn. Mar. 22, 1993). The jury heard through expert testimony that Richard Myers's injuries put him at risk for several other conditions that would require treatment, including glaucoma, retinal detachment, or phthisis. The Myers's medical expert testified that corneal transplant and lens implant surgery would cost a "minimum" of $10,000 and that he would miss at least several weeks of work. Because the evidence supports an award of future medical expenses, and the jury was the final arbiter of the amount, the trial court did not abuse its discretion by refusing to grant Hearth a remittitur on this element of damages, regardless of the amount of damages requested by the Myers's attorney in final argument.

■ The jury also awarded the Myers more than $1 million in general damages: $500,000 for "[e]mbarrassment, emotional distress, pain, disability, and disfigurement" through the date of trial, and $540,000 for future damages for those reasons.

Richard Myers was seriously injured by the explosion. As a result, he is legally blind in his right eye, and even surgery cannot improve his sight in that eye. His left eye was also damaged, though not as severely. Glass from the explosion cut him on his face, ear, neck, chest, and arm. He has "slight scarring" on his neck and chest. His ability to do his job has been impaired because of his reduced vision and depth perception. His ability to do everyday things such as driving or household chores has also been impaired or destroyed. Bright light bothers him, and he wears sunglasses whenever he goes outside. He worries about injuring his remaining good eye and becoming blind.

■ When considering whether a verdict is excessive, "a comparison with previous verdicts is not justified because of the variations in facts and fluctuations in the economy." *Stenzel v. Bach,* 295 Minn. 257, 261, 203 N.W.2d 819, 822 (1973) (cita-

tion omitted). While a damages amount may be large compared to the severity of a plaintiff's injuries, "the assessment of damages is the peculiar province of the jury." *Schindele v. Ulrich,* 268 N.W.2d 547, 552 (Minn.1978). The test for setting aside a verdict as excessive by the trial court is whether it shocks the conscience. *DeWitt v. Schuhbauer,* 287 Minn. 279, 286, 177 N.W.2d 790, 795 (1970). Although the verdict may be generous, the trial court did not abuse its discretion in refusing to grant the motion for new trial or for remittitur.

4. Hearth argues that the court erred in awarding the Myers preverdict interest on the award for past general damages, contending that an award of preverdict interest is not proper where the amount of damages was not readily ascertainable before trial or required substantial jury discretion. The Myers claim that the plain language of Minn.Stat. § 549.09 (1998), as well as caselaw interpreting that statute, entitles him to preverdict interest on the past general damages award.

This court has squarely held that it is proper to award preverdict interest on such damages. *Skifstrom v. City of Coon Rapids,* 524 N.W.2d 294, 295–97 (Minn. App.1994) (award of preverdict damages for past pain, disability, and emotional distress proper), *review granted* (Minn. Feb. 3, 1995), *review dismissed* (Minn. Oct. 25, 1995). The *Skifstrom* court specifically rejected the argument that awards of preverdict interest are dependent on the ascertainability of damages. The court relied on a 1988 decision by the Minnesota Supreme Court holding that a 1984 amendment to section 549.09 eliminated the ascertainability requirement that had applied at common law:

> [S]ection 549.09 was amended to allow pre-verdict interest irrespective of a defendant's ability to ascertain the amount of damages for which he might be held liable.

*Skifstrom,* 524 N.W.2d at 296 (quoting *Lienhard v. State,* 431 N.W.2d 861, 865 (Minn.1988)). In *Lienhard,* the supreme court also cited legislative history supporting its interpretation that the 1984 amendment changed the ascertainability rule, observing that the statute "appears to represent a retreat from the defendant's point of view in favor of the plaintiff's perspective with respect to compensation." *Lienhard,* 431 N.W.2d at 865.

The court's discussion of section 549.09 and the ascertainability rule was necessary to its ultimate holding; because preverdict interest can be awarded even when the amount of such interest cannot be ascertained until fixed by verdict, the supreme court held that preverdict interest is not "conventional interest," but instead an additional element of compensatory damages subject to a statutory cap on damages awarded against the state. *Id.* at 865–66. *Lienhard* thus considered and decided the question of the continued applicability of the ascertainability rule in a context where the issue was necessary to the holding in the case. Because the supreme court has held that preverdict interest is available "irrespective of a defendant's ability to ascertain the amount of damages," *id.* at 865, we conclude that post-*Lienhard* cases that apply the ascertainability rule, including those cited by Hearth, are incorrect. *See, e.g., Pine Valley Meats, Inc. v. Canal Capital Corp.,* 566 N.W.2d 357, 364 (Minn. App.1997), *review* denied (Minn. Sept. 18, 1997). The trial court did not err by awarding the Myers preverdict interest.

## DECISION

We affirm on all grounds the trial court's decision to deny Hearth's motion for a new trial or remittur.

**Affirmed.**