BYE, Circuit Judge,
concurring in part and dissenting in part.
I concur in affirming the district court’s decision to deny OMJP’s motions for judgment as a matter of law and for a new trial with respect to the jury’s award of compensatory damages. I believe, however, there was sufficient evidence from which a reasonable jury could conclude OMJP deliberately disregarded the risk of tendon injuries in elderly patients who were prescribed Levaquin in association with corticosteroids. I therefore respectfully dissent from the decision to reverse the denial of OMJP’s motion for judgment as a matter of law on punitive damages.
When reviewing the district court’s denial of the motion for judgment as a matter of law on punitive damages, we “must draw all reasonable inferences in favor of the nonmoving party, and ... may not make credibility determinations or weigh the evidence.” Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). “Judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party.” Howard v. Mo. Bone & Joint Ctr., Inc., 615 F.3d 991, 995 (8th Cir.2010) (internal quotation marks and citation omitted).
In denying OMJP’s motion for judgment as a matter of law, the district court emphasized three points: (1) OMJP’s knowledge of Levaquin’s potential for higher tendon toxicity; (2) OMJP’s assistance in the Resign of the Ingenix study with the motive to cloud the field of academic literature on the topic of Levaquin’s potential for higher tendon toxicity; and (3) OMJP’s failure to adequately warn prescribers of Levaquin’s potential for higher tendon toxicity. See Schedin v. Ortho-McNeil-Janssen Pharm., Inc., 808 F.Supp.2d 1125, 1137 (D.Minn.2011). In reversing the district court, the majority cryptically states “this motive allegation is mere speculation,” ante at 1169, presumably disagreeing with the district court’s second point.
The punitive damage award should not, however, rise or fall on whether the jury reasonably found OMJP manipulated the Ingenix study. Even assuming the jury rejected Schedin’s allegations regarding the Ingenix study, the evidence was more than sufficient to allow a reasonable jury to infer that OMJP deliberately acted with indifference to a high degree of probability of injury, see Minn.Stat. § 549.20(1), based on (1) OMJP’s knowledge of the serious risks associated with Levaquin’s potential for higher tendon toxicity when prescribed to elderly patients in conjunction with corticosteroids, and (2) OMJP deliberately choosing a course of action whereby physi *1171 cians would not be adequately apprised of the increased risk.
Schedin presented evidence from which a jury could reasonably infer OMJP was more concerned about its profits, and how those profits would be affected by effective warnings, than it was about the possibility Levaquin could injure elderly patients who were prescribed the drug in association with corticosteroids. As early as 1999, OMJP was aware of an increased risk of tendon disorders associated with the use of Levaquin in patients who had been prescribed a steroid. Schedin presented evidence of OMJP’s perception of the regulatory action taken in Europe in response to numerous adverse event reports associating Levaquin with tendon injuries, evidence which showed OMJP connected an increase in regulation with a decrease in profits. Included in this evidence was a memo in which OMJP linked the sending of a Dear Doctor letter — something the jury’s verdict on compensatory damages clearly infers OMJP should have undertaken in order to satisfy its legal duty to provide an adequate warning — directly to the company’s profits vis a vis its marketing of Levaquin. “[I]f a Dear Dr letter has to go out and consequently reporting goes up — as it will do, leading to an aggravation of the situation and ultimate product withdrawal.” Appellee’s App. at 473.
The original label OMJP issued when it first began marketing Levaquin in the United States contained no mention about the increased risks associated with prescribing Levaquin to elderly patients. The evidence showed that it is customary for physicians to rely upon Dear Doctor letters, and updates from pharmaceutical representatives, whenever there is a significant change in a product’s labeling after its initial release into the marketplace. But when OMJP revised Levaquin’s labeling in 2002, it deliberately chose not to issue Dear Doctor letters or even to instruct its pharmaceutical representatives to advise physicians of the label change. Instead, OMJP deliberately chose to bury the updated warning — a single twenty-word sentence — inside thirty pages of fine print in the revised package insert, and then took no further action to ensure physicians would be aware of the label’s revised warnings. The jury could reasonably infer OMJP chose this course of action because issuing Dear Doctor letters, or instructing pharmaceutical representatives to spread the word about the increased risk, would have a direct and adverse affect on OMJP’s profits.
Thus, contrary to the majority’s conclusion that OMJP’s conduct showed the company “actively sought ways to prevent the dangers associated with its product[,]” ante at 1169 (quoting Beniek v. Textron, Inc., 479 N.W.2d 719 723 (Minn.Ct.App. 1992)), OMJP’s deliberate choices virtually guaranteed that physicians would remain unaware of the increased risk of prescribing Levaquin to elderly patients in conjunction with corticosteroids. By reversing the punitive damage award we encourage other pharmaceutical companies to make the same devious choices OMJP made, instead of affirming the jury’s decision to deter such conduct.
I concur in part, and respectfully dissent in part.